

$4ₒₒ

## 1UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN SNYDER, CHERYL ROBINSON-KELLY, BARBARA FREDERICI, AND KIMBERLY NIEDRIST, individually and on behalf of all others similarly situated, | ) ) Civil Action No.:    17    960 ) ) ) **CLASS ACTION COMPLAINT** |
| Plaintiffs, | ) ) |
| v. | ) ) |
| HOLY REDEEMER HEALTH SYSTEM d/b/a/ HOLY REDEEMER HOSPITAL; THE HOLY REDEEMER HEALTH SYSTEM PENSION PLAN COMMITTEE; and DOE DEFENDANTS 1-20, | ) ) ) ) ) ) |
| Defendants. | |

Plaintiffs (collectively "Plaintiffs"), individually and on behalf of all those similarly situated, as well as on behalf of the Retirement Plan for Employees of Holy Redeemer Health System, as defined herein, based on personal knowledge with respect to their own circumstances and based upon information and belief pursuant to the investigation of their counsel as to all other allegations, allege as follows:

### INTRODUCTION

1.     This is a class action against the Holy Redeemer Health System, Inc. d/b/a Holy Redeemer Hospital ("Holy Redeemer" or the "Hospital"), the Holy Redeemer Health System Pension Plan Committee (the "Committee"), and John Does 1-20 concerning the Retirement Plan for Employees of Holy Redeemer Health System (the "Plan").

2.     Plaintiffs' allegations concern whether Holy Redeemer properly maintains its pension plan under the Employee Retirement Income Security Act ("ERISA"). Specifically, Plaintiffs allege that Holy Redeemer has improperly underfunded the Plan by millions of dollars, in violation of the mandates of ERISA.

3.      To be precise, for the fiscal year ended June 30, 2013, the Plan was $15.77 million underfunded. *See* Holy Redeemer Healthcare System, Inc. and Affiliates Consolidated Financial Statements and Additional Consolidating Information as of and for the Years Ended June 30, 2012 and 2013 ("2013 Consolidated Financial   Statements") at 34.

4.      The Plan's deficit significantly worsened in the following years, such that as of June 30, 2015 the Plan was $18.8 million underfunded, and ballooned to a $47 million deficit as of June 30, 2016. *See* Holy Redeemer Healthcare System, Inc. and Affiliates Consolidated Financial Statements and Additional Consolidating Information as of and for the Years Ended June 30, 2016 and 2015 ("2016 Consolidated Financial   Statements") at 34.

5.      Defendants cannot excuse or justify the severe underfunding on the grounds that the Plan qualifies as a "church plan," and is therefore exempt from the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

6.      To the contrary, as described herein, the Plan does not meet ERISA's requirements for the "church plan" exemption, because it was not "established," and is not "maintained" by a church. Rather, the Plan was established by a not-for-profit health care corporation, and is now maintained by the Hospital, which is a business – not a church or a convention or association of churches.

7.      Accordingly, the Plan is governed by all of the funding, fiduciary, and notice requirements of ERISA.   This action seeks to require Defendants to comply with those requirements, and to pay damages and penalties as a result of their past failures to do so.

## JURISDICTION AND VENUE

8.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29

2

U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA").

9.     This court has personal jurisdiction over Defendants because they are headquartered and transact business in, or reside in, and have significant contacts with, this District, and because ERISA provides for nationwide service of process.

10.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

11.     Plaintiff, Karen Snyder ("Snyder") is a citizen and resident of the Commonwealth of Pennsylvania. Plaintiff Snyder was employed by the Hospital for approximately 13 years. Plaintiff Snyder worked as a nurse from on or about 2001 until 2014. Plaintiff Snyder became a participant in the Plan beginning in or around 2006, and is still a current participant in the Plan.

12.     Plaintiff Cheryl Robinson-Kelly ("Robinson-Kelly") is a citizen and resident of the Commonwealth of Pennsylvania. Plaintiff Robinson-Kelly was employed by the Hospital for approximately 30 years. Plaintiff Robinson-Kelly worked as a nurse from on or about November 1982 until July 2012. Plaintiff Robinson-Kelly became a participant in the Plan beginning in or around 1987, and is still a current participant in the Plan.

13.     Plaintiff Barbara Frederici ("Frederici") is a citizen and resident of the Commonwealth of Pennsylvania. Plaintiff Frederici was employed by the Hospital for

3

approximately 26 years. Plaintiff Frederici worked at different times both as a nurse's aid and a nurse from on or about 1979 until January 2005. Plaintiff Frederici became a participant in the Plan beginning in or around 2002, and is still a current participant in the Plan.

14.    Plaintiff Kimberly Niedrist ("Niedrist") is a citizen and resident of the Commonwealth of Pennsylvania. Plaintiff Niedrist was employed by the Hospital for approximately 6 years. Plaintiff Niedrist worked as a secretary/front office clerk from on or about May 1999 until January 2005. Plaintiff Niedrist became a participant in the Plan beginning in or around May 2000, and is still a current participant in the Plan.

15.    Defendant Holy Redeemer Health System is a 501(c)(3) non-profit corporation that does business as Holy Redeemer Hospital. It maintains its headquarters in Meadowbrook, Pennsylvania. Holy Redeemer is the employer responsible for maintaining the Plan and is, therefore, the plan sponsor within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

16.    The Committee is an unincorporated association, which, upon information and belief, is the Plan Administrator and/or named fiduciary.

17.    John Does 1-20 are the individual members of the Committee and members of any other committee(s) which administer the Plan. The identity of the members of the Committee, and any of the other committee(s) which was or were responsible for carrying out the provisions of the Plan, is currently not known. Upon information and belief, John Does 1-20 are senior executive officers of the Hospital who knew or should have known the facts alleged herein. The Committee and John Does 1-20 are hereafter collectively referred to as the "Committee Defendants."

4

## ERISA AND THE CHURCH PLAN EXEMPION

18.     A central tenet of ERISA is the protection of retirement savings of pension plan participants in a variety of ways.  As to participants in traditional defined benefit pension plans, such as the plan at issue here, ERISA mandates, among other things, that such plans be currently funded and actuarially sound, that participants' accruing benefits vest pursuant to certain defined schedules, that the administrators of the plan report certain information to participants and to government regulators, that the fiduciary duties of prudence, diversification, loyalty, and so on apply to those who manage the plans, and that the benefits promised by the plans be guaranteed, up to certain limits, by the Pension Benefit Guaranty Corporation.  *See, e.g.*, ERISA §§ 303, 203, 101-106, 404-406, 409, 4007, 4022, 29 U.S.C. §§ 1083, 1053, 1021-1026, 1104-1106, 1109, 1307, 1322.

19.     As evidenced by its very title, which speaks to "retirement income security," ERISA is centered on pension plans, and particularly defined benefit pension plans, as is reflected in the very title of the Act."  However, defined contribution pension plans (such as 401(k) plans) and welfare plans, which provide health care, disability, severance and related non-retirement benefits are also subject to federal regulation under ERISA.  ERISA § 3(34) and (1), 29 U.S.C. § 1002(34) and (1).

20.     When it was adopted in 1974, ERISA provided an exemption from certain of its requirements for selected plans, which included governmental plans and Church Plans.  Plans that met the statutory definitions were exempt from all of ERISA's substantive protections for participants.  ERISA § 4(a) and (b), 29 U.S.C. § 1003(a) and (b).

21.     ERISA defines a Church Plan as a plan "established and maintained for its employees by a church or by a convention or associations of churches."

5

22.     Church groups had two major concerns about the definition of "Church Plan" in ERISA as adopted in 1974.  The primary concern was that a Church Plan after 1982 could not include the lay employees of agencies of a church.  A second concern that arose in the church community after 1974 was more technical.  Under the 1974 statute, all Church Plans, single-employer or multiemployer, had to be "established and maintained" by a church or a convention/association of churches.  This ignored the role of the churches' financial services organizations in the day-to-day management of the pension plans.  In other words, although Church Plans were "established" by a church, in practice they were often "maintained" by a separate financial services organization of the church, usually incorporated and typically called a church "pension board."

23.     As to the first concern (regarding employees of agencies of a church), Congress included a new definition of "employee" in subsection (C)(ii)(II) of section 3(33) of ERISA. 29 U.S.C. § 1002(33)(C)(ii)(II) (1980) (current version at 29 U.S.C. § 1002(33)(C)(ii)(II) (West 2013)).  As amended, an "employee" of a church or a convention/association of churches includes an employee of an organization "which is controlled by or associated with a church or a convention or association of churches."  *Id.*  The phrase "associated with" is then defined in ERISA section 3(33)(C)(iv) to include only those organizations that "share[] common religious bonds and convictions with that church or association of churches." 29 U.S.C. § 1002(33)(C)(iv) (1980) (current version at 29 U.S.C. § 1002(33)(C)(iv) (West 2013)).  Although this new definition of "employee" permitted a "Church Plan" to include among its participants employees of organizations controlled by or associated with the church, convention, or association of churches, it remains the case that a plan covering such "employees" cannot qualify as a "Church Plan" unless it was "established by" the church,

6

convention, or association of churches. ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) (West 2013).

24.     As to the second concern (regarding plans "maintained by" a separate church pension board), the 1980 amendment spoke to the issue as follows:

> A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

ERISA § 3(33)(C)(i) (1980), 29 U.S.C. § 1002(33)(C)(i) (1980) (emphasis added) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)). Accordingly, under this provision, a plan "established" by a church or a convention or association of churches could retain its "Church Plan" status even if the plan was "maintained" by a distinct organization, so long as (1) "the principal purpose or function of [the organization] is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits," and (2) the organization is "controlled by or associated with" the church or convention of association of churches. ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i) (1980) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)).

25.     This church "pension board" clarification has no bearing on plans that were not "established" by a church or convention or association of churches – such as the Plan at issue. Thus, a plan "established" by an organization "controlled by or associated with" a church would not be a "Church Plan" because it was not "established" by a church or a convention or association of churches.

7

26.    Further, this "pension board" clarification has no bearing on plans that were not "maintained" by a church pension board. Thus, even if a plan were "established" by a church, and even if it were "maintained by" an organization "controlled by or associated with" a church, such as a school, hospital, or publishing company, it still would not be a "Church Plan" if the principal purpose of the organization was *other than* the administration or funding of the plan. In such plans, the plan is "maintained" by the school, hospital or publishing company, and usually through the human resources department of such entity. It is not maintained by a church pension board: No "organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits" maintains the plan. Compare with ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i) (1980) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)).

27.    The requirements for Church Plan status under ERISA, both as originally adopted in 1974 and as amended in 1980, are, as explained above, very clear. And there is no tension between the legislative history of the 1980 amendment and the amendment itself: The Congress enacted exactly what it wanted to enact. Fundamental to the scheme, both as originally adopted and as fine-tuned in 1980, was that neither an "affiliate" of a church (using the 1974 language) nor "an organization controlled by or associated with a church" (using the 1980 language) could *itself* establish a Church Plan. Its employees could be *included* in a Church Plan, but if it sponsored its own plan, that was not a Church Plan. With respect to "pension boards," the 1980 legislation simply clarified the long standing practice that churches could use their own financial organizations to manage their Church Plan.

8

## FACTUAL ALLEGATIONS

### A.   Holy Redeemer Health System

28.     As a preliminary matter, the Hospital is not a church as that term is defined under ERISA.

29.     The Hospital is a 242-bed teaching hospital located in Meadowbrook, Pennsylvania which provides skilled nursing care.

30.     In addition to operating the Hospital, Holy Redeemer Health also includes, *inter alia*: (i) Holy Redeemer HealthCare at Huntington Valley, Ambulatory Surgery, a 46,000 square foot facility offering same-day and outpatient surgery, as well as pre-surgical and general testing and women's diagnostic services; (ii) Holy Redeemer HealthCare at Bensalem, a medical campus focusing on the whole patient, with physician offices, diagnostic testing, and patient education; (iii) Holy Redeemer HealthCare at Cardone, which provides family health and wellness services to the employees and families of Philadelphia's largest manufacturing company; (iv) Holy Redeemer Women's HealthCare at Southampton, which provides medical care, diagnosis, and treatment of breast disease, and also includes a full complement of wellness programs, such as spa services and fitness programs designed especially for the cancer patient; (v) Holy Redeemer Health & Fitness Center, which provides a medically supervised approach and access to a professional staff of exercise physiologists, certified aerobics instructors, and registered nurses; (vi) Holy Redeemer Counseling Center, which includes certified and licensed marriage and family therapists, licensed professional counselors, licensed psychologists, and licensed clinical social workers; (vii) Holy Redeemer Charles A. and Betty Bott Cancer Center, located at Holy Redeemer Hospital, which provides diagnosis and treatment of all forms of cancer, support groups, and wellness programs; (viii) Holy Redeemer Pediatric UrgiCare,

9

provides treatment for infants, children and adolescents when a pediatrician or family doctor is not available and is a quality alternative to the Emergency Department.

31.    Holy Redeemer also operates independent living, personal care and long-term care options through five communities:  (i) Holy Redeemer Lafayette; (ii) Holy Redeemer St. Joseph Manor; (iii) Holy Redeemer D'Youville Manor; (iv) The Villages at Pine Valley; and (v) Holy Redeemer Village.

32.    In addition, Holy Redeemer is the largest nonprofit provider of home health and hospice services in the state of New Jersey, offering a continuum of services throughout 12 New Jersey counties, including Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester, Mercer, Middlesex, Ocean, Salem, Somerset and Union.

33.    Holy Redeemer also provides homecare and hospice to patients and their families in Philadelphia, Bucks and Montgomery counties in Pennsylvania.

34.    Holy Redeemer Healthcare employs over 4,000 employees.

35.    Holy Redeemer itself confirms that its focus is on providing healthcare in describing the Hospital as "one of the area's leading providers of comprehensive inpatient and outpatient services" and noting that it "offers a full range of acute, ambulatory and emergency services."

36.    In addition to focusing on offering healthcare services, Holy Redeemer Health System is also the sole corporate member to a web of interrelated companies that are part of the system – none of which are associated with a church.  Included under Holy Redeemer's umbrella are, *inter alia*:  (i) HR Physician Services (d/b/a Holy Redeemer Physician and Ambulatory Services), which employs and contracts with physicians and other health care providers who deliver health care services to HRHS affiliates, as well as HRPS-owned physician practices; (ii)

10

Holy Redeemer Visiting Nurse Agency, Inc., which is a Medicare-certified home health agency and hospice located in New Jersey, which provides a full range of home health care services; (iii) THR Insurance Company Ltd., formed May 6, 2005, is a freestanding corporation through which HRHS insures its professional liability and general liability risk through the single parent captive insurance company; (iv) HRH Management Corporation owns and manages several medical office buildings within the primary service area of the Holy Redeemer Hospital, and the properties are leased to physicians and other related HRHS activities; (v) Drueding Center provides housing, child daycare and a comprehensive network of health, social, educational, and vocational services to homeless single women and their children; (vi) Redeemer Village and Redeemer Village II are two separate corporations, which provide low-income independent housing to the elderly and disabled; (vii) Visiting Nurse and Health Services (VNHS) doing business as Holy Redeemer Home Care – North, which provides skilled nursing, therapy, nutrition, social work, and other health care services such as Medicare-certified home health agencies; (viii) Holy Redeemer Home Care, Inc., which provides skilled nursing, therapy, nutrition, social work, and other health care services such as Medicare-certified home health agencies; (ix) Holy Redeemer Hospice, Inc. (HR Hospice), which provides hospice services as a Medicare-certified hospice agency; (x) VNA Home Care of Mercer County, which provides skilled nursing, specialty nursing, hospice services and a full range of rehabilitation and certified home health aide services in Mercer county, New Jersey; (xi) Holy Redeemer Ambulatory Surgery Center, LLC operates a freestanding ambulatory surgery center near the campus of Holy Redeemer Hospital; (xii) D'Youville Manor, which is a 51 bed personal care facility located in Yardley, Bucks County Pennsylvania; (xiii) Holy Redeemer Active and Retirement Living Community, which is a nonprofit continuing care and retirement community, and also maintains

11

an ownership interest in the Views at Pine Valley; (xiv) Holy Redeemer Active and Retirement Communities, Inc. was formed on July 1, 2004, to construct and sell age-restricted housing, and it also maintains an ownership interest in the Views at Pine Valley; and (xv) Innovative Wellness Alliance, LLC operates as a Clinically Integrated Network of Physicians.

37.    The management of Holy Redeemer is comprised primarily of lay people, and Executive Officers of Holy Redeemer receive compensation in line with executive officers of other hospital systems.  Several officers and key employees received reportable compensation in excess of a quarter million dollars as far back as 2010.

38.    Holy Redeemer does not receive funding from the Catholic Church or other religious organizations.

39.    Holy Redeemer does not impose its beliefs or religious practices on its clients/patients.  In fact, Holy Redeemer offers the services of a Jewish Cantor for patients of Holy Redeemer HomeCare and Hospice.  According to Alicia Campell, Vice President of HomeCare and Hospice for Holy Redeemer Health System, "[p]roviding pastoral care to our patients and their families – *regardless of their religious affiliation* – is something that Holy Redeemer Health System strives for.  *See,* Press Release dated 1/20/16, "Holy Redeemer HomeCare and Hospice Enlists Cantor Scott Borsky to Attend to Jewish Patients' Spiritual Needs." http://www.holyredeemer.com/Main/PressReleaseArchive1/Holy-Redeemer-HomeCare-and-Hospice-Enlists-Cantor-314.aspx, last accessed November 3, 2016.

40.    As detailed above, the Hospital is part of a larger network of health-care related companies controlled by Holy Redeemer, including a wholly owned captive insurance company which provides affiliated companies with general liability and professional medical liability insurance. *See* 2016 Consolidated Financial Statements, at 8.

12

41.     In total, Holy Redeemer's revenues and gains exceeded its expenses and losses by more than $23 million in fiscal year 2014 alone, with over $233 million in net assets as of June 30, 2014. *See* 2015 Consolidated Financial Statements, at 6.

42.     For Fiscal year ended 2015, revenues and gains exceeded its expenses and losses by almost $13 million, with over $230 million in net assets as of June 30, 2015. *See* 2015 Consolidated Financial Statements, at 6.

43.     In fact, Holy Redeemer recorded $353.315 million in net patient service revenue in fiscal year 2015, after provision for bad debts. *Id.* at 5. For fiscal year 2016, Holy Redeemer recorded $361.898 million in net patient service revenue, an increase of over $9 million.

44.     In 2012, Holy Redeemer authorized executing a letter of intent to create a new regional health system by merging with Abington Hospital, a hospital with no religious affiliation.

45.     Holy Redeemer also collaborates with medical institutions that claim no religious affiliation of any kind. "Holy Redeemer continues to evaluate potential partnerships and collaborations with physicians and other organizations in both Pennsylvania and New Jersey that are committed to superior outcomes, innovative care and unparalleled experiences." *See*, "Holy Redeemer pursuing partnerships on heels of Abington-Jefferson merger." Philadelphia Business Journal, October 31, 2014, http://www.bizjournals.com/philadelphia/blog/health-care/2014/10/abington-memorial-rival-says-its-alsopursuing.html, last accessed November 3, 2016.

46.     Moreover, Holy Redeemer and Temple University Hospital, a non-denominational hospital, entered into a clinical partnership that places Temple neurologists and neurosurgeons onsite at Holy Redeemer Hospital as of March 24, 2016.

13

47.    The Hospital is not, and does not claim to be a church.

48.    Notably, on its form 990, Holy Redeemer does not claim to be "A church, convention of churches, or association of churches described in section 170(b)(1)(A)(i)." Rather, it states that its reason for public charity status is because it is "A hospital or a cooperative hospital service organization described in section 170(b)(1)(A)(iii).

49.    The organizational structure of Holy Redeemer confirms this conclusion. In addition to earning salaries in excess of a quarter million dollars, the executives of Holy Redeemer Health System are lay people – not members of any clergy or persons in religious orders.    Notably, the President / Chief Executive Officer, Chief Financial Officer, Chief Information Officer, Chief Medical Officer, and various Senior Vice-Presidents are all laypeople.

50.    Moreover, of the seventeen individuals listed as board members on Holy Redeemer's Federal Form 990 for the year 2013, only one was a member of the clergy or a religious order.

**Defendant's Plan**

51.    The Plan was established and is now maintained by the Hospital to provide retirement income to employees of certain subsidiaries of Holy Redeemer. *See* 2016 Consolidated Financial Statements, at 34 ("Certain of the subsidiaries of Holy Redeemer participate in the Retirement Plan for Employees of Holy Redeemer Health System, (the Plan), a noncontributory defined benefit pension plan, which covers substantially all employees within these entities."); *Id.* Thus, the Plan was not established and is not maintained by a church or convention or association of churches.

14

52.     The Plan is an account balance plan where "[F]uture additions to the account balances will be made based on age and compensation provides benefits based on the participant's years of service and compensation." *Id.*

53.     The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(a)(A).

54.     The Plan is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

55.     Upon information and belief, at all relevant times, the Committee Defendants have been the Administrators of the Plan within the meaning of ERISA. § 3(16)(A), 29 U.S.C. § 1002(16)(A).  They have also been fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because they have exercised authority or control respecting management or disposition of Plan's assets, or has had discretionary authority or discretionary responsibility in the administration of the Plan.

56.     The Hospital is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because it has exercised authority or control respecting management or disposition of the Plan's assets, or has had discretionary authority or discretionary responsibility in the administration of the Plan.

57.     Similarly, Holy Redeemer is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because it has exercised authority or control respecting management or disposition of the Plan's assets, or has had discretionary authority or discretionary responsibility in the administration of the Plan.

58.     In particular, Holy Redeemer, acting through its Board of Directors and its Finance and Investment Committee, is responsible for the acts alleged herein.  *See* 2016

15

Consolidated Financial Statements, at 37 ("...Finance & Investment Committee of the Board of Directors, which oversees the pension investment program.")

59.     Moreover, upon information and belief, Holy Redeemer is the Plan Sponsor.

60.     Additionally Holy Redeemer has also been a party-in-interest under ERISA § 3(14), 29 U.S.C. § 1002(14), both because it is a fiduciary and because it is an employer whose employees are covered by the Plan.

**The Plan is not a Church Plan**

61.     Despite its status as an ERISA plan, Defendants claim that the Plan is a "church plan" to evade ERISA's protections to which its employees are entitled. *See, e.g.*, 2016 Consolidated Financial Statements at 34 ("The Plan has received favorable determination for church plan status and, as such, is not subject to certain reporting requirements under the Employee Retirement Income Security Act of 1974.)

62.     Defendants' failure to treat the Plan as an ERISA plan puts the Plan's participants at risk of receiving pension payouts drastically lower than those proposed, and deprives Plan participants of material information as alleged below.

63.     By avoiding ERISA's requirements, Defendants obtain a competitive advantage over the other nonprofit healthcare entities that comply with ERISA.

64.     Importantly, however, the Plan is not a "Church Plan."

65.     Under section 3(33) of ERISA, 29 U.S.C. § 1002(33), only the following two types of plans may qualify as a Church Plan:

- First, under section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan *established and maintained* by a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. §

16

1002(33)(B); and

- *Second*, under section 3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i), a plan *established* by a church or by a convention or association of churches that is *maintained* by an organization, *the principal purpose or function of which* is the administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B).

66.    Importantly, both types of plans must be "established" by a church or by a convention or association of churches in order to qualify as a "Church Plan."

67.    First, under ERISA section 3(33)(A), a Church Plan is "a plan established and maintained for its employees by a church or by a convention or association of churches which is exempt from tax under section 501 of title 26." ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).

68.    As alleged above, several factors demonstrate that the Hospital is not a "church" or a "convention or association of churches." *See* ¶¶ 26-47.

69.    The Plan was established by the Hospital, not by a church or convention or association of churches.

70.    Accordingly, the Plan was not "established" by a church or by a convention or association of churches.

71.    Moreover, the Plan does not qualify as a "Church Plan" under section 3(33)(C)(i) because it is maintained by Holy Redeemer, whose principal purpose or function is not the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both. Instead, the principal purpose of Holy Redeemer is to own and operate hospitals and healthcare related entities.

17

72.     Second, under ERISA section 3(33)(C)(i), a Church Plan also includes a plan
"established" by a church or by a convention or association of churches that is "maintained by an
organization, whether a civil law corporation or otherwise, the principal purpose or function of
which is the administration or funding of a plan or program for the provision of retirement
benefits or welfare benefits, or both, for the employees of a church or a convention or association
of churches, if such organization is controlled by or associated with a church or a convention or
association of churches."  ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

73.     The principal purpose of the Hospital and the health system is to provide health
care services, not to operate a pension system.

74.     The Plan is maintained by the Hospital, not by a church or convention or
association of churches.

75.     Additionally,  Section3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i),
provides that a plan maintained by a church or a convention or association of churches includes a
plan "maintained by an organization, whether a civil law corporation or otherwise, the principal
purpose or function of which is the administration or funding of a plan or program for the
provision of retirement benefits or welfare benefits, or both, for the employees of a church or a
convention or association of churches, if such  organization is controlled by or associated with a
church or a convention or association of churches."

76.     Since the Plan is maintained by a healthcare company, the Plan is not maintained
by "an organization ... the principal purpose of which is the administration or funding of a plan
or program for the provision of retirement benefits...."  11 U.S.C. § 1002 (33)(C)(i).

18

77.     Moreover, the Plan is not maintained for employees of any church or convention or association of churches. Rather, the Plan is maintained for employees of the Hospital – a multifaceted integrated healthcare organization.

78.     However, even if the Plan had been "established" by a church and even if the principal purpose or function of Holy Redeemer was the administration or funding of the Plan (instead of running a hospital conglomerate), the Plan still would not qualify as a Church Plan under ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the principal purpose of the Plan is not to provide retirement or welfare benefits *to employees of a church or convention or association of churches*. Participants in the Plan work for Holy Redeemer, a non-profit hospital system. Holy Redeemer is not a church or convention or association of churches, and its employees are not employees of a church or convention or association of churches.

79.     Under ERISA section 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii), however, an employee of a tax-exempt organization that is controlled by or associated with a church or a convention or association of churches may also be considered an employee of a church. But the Plan also fails this part of the definition, because Holy Redeemer is not controlled by or associated with a church or a convention or association of churches within the meaning of ERISA.

80.     Holy Redeemer is not operated by the Catholic Church and does not receive funding from the Catholic Church. Indeed, the Catholic Church does not play any official role in the governance of the organization.

81.     Moreover, Holy Redeemer does not make the Catholic faith a factor in the hiring process of employees. Instead, Holy Redeemer recruits and hires from the greatest employment

19

pool possible—one not restricted by any faith—in an attempt to hire the most qualified healthcare workers.

82.     Under ERISA section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii), a plan is specifically excluded from Church Plan status if less than substantially all of the plan participants are members of the clergy or employed by an organization controlled by or associated with a church or convention or association of churches. In this case, there are thousands of participants in the Holy Redeemer Plan, and very nearly all of them are or were non-clergy healthcare workers.

83.     If the thousands of participants in the Plan do not work for an organization that is controlled by or associated with a church or convention or association of churches, then even if the Plan could otherwise qualify as a Church Plan under ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A), it still would be foreclosed from Church Plan status under section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii).

84.     As set forth above, Holy Redeemer is not controlled by a church or association of churches, nor does it share common religious bonds and convictions with a church or association of churches. Instead, it purports to share only some religious convictions with the Catholic Church, while deliberately choosing to distance itself from, and/or deny, other religious convictions of the Catholic Church, when it is in its economic interest to do so.

## CLASS ALLEGATIONS

85.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the classes (the "Class") defined as follows:

> All participants in and beneficiaries of the Retirement Plan for Employees of Holy Redeemer Health System (the "Plan").

Excluded from the Class are Defendants and any individuals who
are subsequently to be determined to be fiduciaries of the Plan.

86.     The members of the Class are so numerous that joinder of all members is
impractical.  Upon information and belief, the Class includes thousands of persons.

87.     Plaintiffs' claims are typical of the claims of the members of the Class because
Plaintiffs' claims, and the claims of all Class members, arise out of the same conduct, policies,
and practices of Defendants as alleged herein, and all members of the Class are similarly affected
by Defendants' wrongful conduct

88.     There are questions of law and fact common to the Class and these questions
predominate over questions affecting only individual Class members.  Common legal and factual
questions include, but are not limited to:

A.     Whether the Plan is covered by ERISA;

B.     Whether the Plan Administrator failed to comply with ERISA's reporting and
disclosure provisions;

C.     Whether Defendants failed to establish a funding policy in compliance with
ERISA; and

D.     Whether the Defendant-fiduciaries breached their fiduciary duties in failing to
comply with the provisions of ERISA set forth above.

89.     Plaintiffs will fairly and adequately represent the Class and have retained counsel
experienced and competent in the prosecution of ERISA class action litigation.  Plaintiffs have
no interests antagonistic to those of other members of the Class.  Plaintiffs are committed to the
vigorous prosecution of this action, and anticipate no difficulty in the management of this
litigation as a class action.

21

90.     This action may be properly certified under either subsection of Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.  Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests

91.     In the alternative, certification under Rule 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

92.     In the alternative, certification under Rule 23(b)(3) is also appropriate.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy within the meaning of Rule 23(b) and in consideration of the matters set forth in Rule 23(b)(3)(A)-(D).  Because of the amount of the individual Class members' claims relative to the complexity of the litigation and the financial resources of the Defendants, few, if any, members of the Class would seek legal redress individually for the wrongs complained of herein. The maintenance of separate actions would place a substantial and unnecessary burden on the courts, and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.  Absent a class action, Class members will continue to suffer damages, and Defendants' misconduct will proceed without remedy.

## CAUSES OF ACTION
## COUNT I
### (Claim for Equitable Relief Pursuant to ERISA Section 502(A)(3))

93.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

94.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief . . . to enforce any provisions of this title." Pursuant to this provision, and 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief that the Holy Redeemer Plan is not a Church Plan within the meaning of ERISA section 3(33), 29 U.S.C. § 1002(33), and thus is subject to the provisions of Title I and Title IV of ERISA.

95.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

96.    Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief that the Plan is not a "church plan" within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and are thus subject to the provisions of Title I and Title IV of ERISA.

97.    Plaintiffs further seek orders directing all Defendants to bring the Plan into compliance with ERISA, including the reporting and funding requirements of ERISA, 29 U.S.C. §§ 1021, 1023, 1082, 1102, and 1104, and by remedying the additional violations set forth below.

98.    Additionally, Plaintiffs seek an order that Defendants make all contributions to the Plan as necessary to remedy the Plan's funding shortfall.

23

## COUNT II
### (Claim for Violation of Reporting and Disclosure Provisions)

99.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

100.    ERISA § 502(a)(1)(A), 29 U.S.C. 1132(a)(1)(A),  permits a plan participant to bring a suit for penalties when a defendant violates the recordkeeping obligations set forth in ERISA.

101.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

### A.     Summary Plan Descriptions

102.    Holy Redeemer has failed to provide Plaintiffs or any member of the Class with a Summary Plan Description with respect to the Plan that meets the requirements of ERISA section 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

103.    Because Holy Redeemer has been the Plan Administrator of the Plan at all relevant times, it violated ERISA section 104, 29 U.S.C. § 1024, by failing to provide Plaintiffs and members of the Class with adequate Summary Plan Descriptions.

### B.     Annual Reports

104.    Under ERISA § 103, 29 U.S.C. § 1023, employee benefit plans are required to file an annual report with the Secretary of Labor. This report, submitted via Form 5500, must include certain specified information about the plan's finances, participants, and administration.

105.    Defendants failed to file annual reports concerning the Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or a Form 5500 and associated

schedules and attachments which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

106.    Defendants have violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Plan with the Secretary of labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or a Form 5500s and associated schedules and attachments.

### C.    Notification of Failure to Meet Minimum Funding

107.    Under ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), employers maintaining employee benefit plans are required to issue a notice to beneficiaries and participants whenever the plan fails to make a required installment or other payment required to meet the minimum funding standards under ERISA

108.    Defendants have failed to furnish the Plaintiffs or any member of the Class with a Notice with respect to the Plan pursuant to ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that the Hospital failed to make payments required to comply with ERISA § 302, 29 U.S.C. § 1082.

109.    At no time has Holy Redeemer furnished Plaintiffs or any member of the Class with a Notice with respect to the Plan pursuant to ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that Holy Redeemer had failed to make payments required to comply with ERISA section 302, 29 U.S.C. § 1082, with respect to the Plan.

110.    Defendant Holy Redeemer has been the employer that established and/or maintained the Plan.

111.    Defendant Holy Redeemer has failed to fund the Plan in accordance with ERISA section 302, 29 U.S.C. § 1082.

112.    As the employer maintaining the Plan, Defendant Holy Redeemer has violated ERISA section 302, 29 U.S.C. § 1082, by failing to fund the Plan, is liable for its own violations of ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiffs and each class member up to $110 per day (as permitted by 29 C.F.R. section 2575.502(c)(3)) for each day that Defendant has failed to provide Plaintiffs and each Class member with the notice required by ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1).

**D.    Funding Notices**

113.    At no time has Holy Redeemer furnished Plaintiffs or any member of the Class with a Funding Notice with respect to the Plan pursuant to ERISA section 101(f), 29 U.S.C. § 1021(f).

114.    At all relevant times, Defendant Holy Redeemer has been the administrator of the Plan.

115.    As the administrator of the Plan, Defendant  Holy Redeemer has violated ERISA section 101(f) by failing to provide each participant and beneficiary of the Plan with the Funding Notice required by ERISA section 101(f), and as such may be required by the Court to pay Plaintiff and each class member up to $110 per day (as permitted by 29 C.F.R. section 2575.502(c)(3)) for each day that Defendant has failed to provide Plaintiffs and each Class member with the notice required by ERISA section 101(f),  29 U.S.C. § 1021(f).

116.    Under ERISA § 101(f), 29 U.S.C. § 1021(f), administrators of defined benefit plans are required to provide annual plan funding notices to all participants and beneficiaries of such defined benefit plans.

117.    At no time has the Committee furnished Plaintiffs or any member of the Class with a Funding Notice with respect to the Plan pursuant to ERISA § 101(f), 29 U.S.C. § 1021(f).

26

118.    As the Administrator of the Plan, the Committee has violated ERISA § 101(f), 29 U.S.C. § 1021(f), by failing to provide each participant and  beneficiary of the Plan with the Funding Notice required by ERISA § 101(f), 29 U.S.C. § 1021(f), and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by 29 C.F.R. § 2575.502(c)(3)) for each day that the Committee has failed to provide Plaintiffs and each Class member with the Funding Notice required by ERISA § 101(f), 29 U.S.C. § 1021(f).

## COUNT III
### (Failure to Provide Minimum Funding)
(ERISA §§ 302 and 502(a)(3), 29 U.S.C. §§ 1082, 1132(a)(3))

119.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

120.    ERISA § 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

121.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

122.    As the employer maintaining the Plan, Holy Redeemer was responsible for making the contributions that should have been made pursuant to ERISA § 302, 29 U.S.C. § 1082, at a level commensurate with ERISA's requirements.

123.    Defendants have failed to make contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082.

124.    By failing to make the required contributions to the Plan, Defendants have violated ERISA § 302, 29 U.S.C. § 1082.

125.    As a result of the Defendants' failure to fund the Plan in accordance with ERISA's minimum funding standards, Plaintiffs and members of the Class face a substantial risk of their pensions being lost or severely reduced.

**COUNT IV**
**Failure to Establish the Plan Pursuant to a Written Instrument Meeting the Requirements**
**of ERISA**
**(ERISA §§ 402, 502(a)(3), 29 U.S.C. §§ 1102, 1132(a)(2))**

126.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

127.    ERISA § 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will, among other things, "provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of [Title I of ERISA]."

128.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

129.    The Plan has not been established pursuant to a written instrument meeting the requirements of ERISA § 402, 29 U.S.C. § 1102.

130.    As Defendants have been responsible for maintaining the Plan and have amendment power over the Plan, they violated § 402, 29 U.S.C. § 1102, by failing to promulgate written instruments in compliance with these sections to govern the Plan's operation and administration.

131.    ERISA section 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will provide among other things "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method constituent with the objectives of the plan and the requirements of [Title I of ERISA]."

132.    Although the benefits provided by the Plan were described to the employees and retirees of Holy Redeemer (and/or its affiliates and subsidiaries) in various written communications, the Plan has not been established pursuant to a written instrument meeting the requirements of ERISA section 402, 29 U.S.C. § 1102.

133.    As Defendant Holy Redeemer has been responsible for maintaining the Plan and has amendment power over the Plan, Holy Redeemer violated section 402 by failing to promulgate written instruments in compliance with ERISA section 402 to govern the Plan operations and administration.  29 U.S.C. § 1102.

**COUNT V**
**Breach of Fiduciary Duty**
**(ERISA §§ 404, 409, 502(a)(2), 29 U.S.C. §§ 1104, 1109, 1132(a)(2))**

134.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

135.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, and defraying reasonable expenses of administering the plan, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting

in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

136.   ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits the fiduciary made through the use of the plan's assets.  ERISA § 409 further privies that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

137.   ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

138.   As fiduciaries of the Plan, Defendants had the duty to comply with and enforce the provisions of ERISA alleged above.

139.   Defendants have not complied with and/or enforced any of the provisions of ERISA set forth above with respect to the Plan.

140.   By failing to enforce the provisions of ERISA set forth above, Defendants have breached their fiduciary duties.

141.   The failure of Defendants to create and enforce adequate funding for the Plan has resulted in a loss to the Plan equal to the foregone funding and earnings thereon, and this failure has provided a benefit to Holy Redeemer, providing it with the use of the funds for its general business purposes that should have been paid to the Plan.

142.   Plaintiffs are entitled to recover those losses on behalf of the Plan.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, respectfully request the Court grant the following relief:

A.   Certifying this action as a class action pursuant to FED. R. CIV. P. 23;

30

B.       Declaring that the Plan is an employee benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), is a defined benefit pension plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is not a Church Plan within the definition of ERISA § 3(33), 29 U.S.C. § 1002(33);

C.       Ordering Defendants to bring the Plan into compliance with ERISA, including, but not limited to, requiring Defendants to fund the Plan in accordance with ERISA's funding requirements, disclose required information to the Plan's participants and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Title I of ERISA;

D.       Designation of Plaintiffs' counsel as class counsel for the Class;

E.       Requiring Defendants to make the Plan whole for all contributions that should have been made pursuant to ERISA funding standards, and for interest and investment income on such contributions, and requiring Defendants to disgorge any profits accumulated as a result of their fiduciary breaches;

F.       Granting a preliminary and permanent injunction, removing Defendants as the Plan's fiduciaries, and appointing one or more independent fiduciaries to hold the Plan's assets in trust, to manage and administer the Plan and its assets, and to enforce the terms of ERISA;

G.       Requiring Holy Redeemer to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to inform Plaintiffs and each Class member of its failure to fund the Plan in accordance with ERISA's requirements;

H.       Requiring Holy Redeemer to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to provide Plaintiffs and each Class member with a Funding Notice regarding the funding status of the Plan;

I.     Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA, with respect to the Plan;

J.     Awarding, declaring, or otherwise providing Plaintiffs and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper, and such appropriate equitable relief as the Court may order, including an accounting, surcharge, disgorgement of profits, equitable lien, constructive trust, or other remedy; and

K.     Awarding to Plaintiffs' counsel attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by the Complaint.

Dated: March 2, 2017                    Respectfully submitted,

                                        **CONNOLLY WELLS & GRAY, LLP**

                                        By: _____
                                            Gerald D. Wells III
                                            Stephen E. Connolly
                                            2200 Renaissance Blvd., Suite 308
                                            King of Prussia, PA 19406
                                            Telephone: 610-822-3700
                                            Facsimile: 610-822-3800
                                            Email:    gwells@cwglaw.com
                                                      sconnolly@cwglaw.com


                                        **THE KEHOE LAW FIRM**
                                            Michael K. Yarnoff
                                            Two Penn Center Plaza
                                            1500 JFK Boulevard, Suite 1020
                                            Philadelphia, PA 19102

32

Telephone: (215) 792-6676
Facsimile: (215) 792-6676
Email: myarnoff@kehoelawfirm.com

***Attorneys for the Plaintiff and the
Proposed Class***