## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

--------------------------------------------------------
KAREN SNYDER, CHERYL ROBINSON-
KELLY, BARBARA FREDERICI, AND
KIMBERLY NIEDRIST, individually and on
behalf of all others similarly situated,

                                Plaintiffs,

             v.

HOLY REDEEMER HEALTH SYSTEM d/b/a/
HOLY REDEEMER HOSPITAL, *et al.*,

                            Defendants.
--------------------------------------------------------

:
:
:   Civil Action No. 2:17-cv-00960-TJS-JPH
:
:
:
:
:
:
:
:
:
:
:
:

## DECLARATION OF GERALD D. WELLS, III IN SUPPORT OF
## MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

I, Gerald D. Wells, III, declare as follows:

1.      I am a founding member of the law firm of Connolly Wells & Gray, LLP (the "Firm" or "CWG"). I am personally involved in the prosecution of this matter.

2.      My practice has concentrated on prosecuting wage and hour, ERISA and consumer class actions.

3.      The Firm was founded in October of 2013. Prior to starting Connolly Wells & Gray, I was associated with the law firm of Faruqi & Faruqi, LLP ("F&F"). I became a partner at F&F in January 2012. While at F&F, I was either chair or co-chair of the firm's employment practices group.

4.      I have been involved in this Action from the initial investigation through its resolution.

5.    I make this Declaration in support of Plaintiff's unopposed motion regarding preliminary approval of this proposed class action ("Plaintiff's Motion"), which seeks preliminary approval of the Settlement Agreement.[1]  The matters set forth herein are stated within my personal knowledge as well as information shared with me by my partner, Robert J. Gray.

6.    I am submitting this declaration to put before the Court certain documents and facts supporting preliminary approval of the Settlement and demonstrating that the requirements of Rule 23 are satisfied here for purposes of certifying the Settlement Class and that the proposed Settlement is fair, reasonable, and adequate.

7.    Accordingly, I believe that the proposed Class Notice should be disseminated to the Settlement Class members.

8.    Attached hereto as Exhibit 1 is a true and correct copy of the Settlement Agreement with all exhibits thereto.

## FACTS AND PROCEDURAL BACKGROUND

9.    Plaintiffs Karen Snyder, Cheryl Robinson-Kelly, Barbara Frederici, and Kimberly Niedrist filed their initial complaint on March 2, 2017, asserting various claims for relief under ERISA.  The crux of the allegations in the complaint were that Defendant had not operated the Plan in accordance with ERISA due to Defendant improperly claiming that the Plan qualified for the Church Plan exemption.

10.    Shortly after the filing of the complaint, counsel for the Parties met and conferred and jointly submitted a request for the Court to stay the proceedings pending the

---

[1] All capitalized words not otherwise defined in this declaration have the same meaning given them in the Settlement Agreement.

Supreme Court's decision in *Advocate Health Care Network v. Stapleton*.

11.     During the negotiation of this stay, Plaintiffs also negotiated the production of certain Plan-related materials from Defendant, including the Plan itself and its amendments as well as letters from the IRS indicating that the Plan qualified for the Church Plan exemption.

12.     After the Supreme Court issued its decision in *Stapleton*, on August 28, 2017, Plaintiffs filed an amended complaint so as to further refine their claims in light of the Supreme Court's decision.

13.     The following month, Defendant moved to dismiss Plaintiffs' amended complaint pursuant to Rule 12(b)(1) and 12(b)(6).

14.     After the motion was fully briefed, the Court issued an order on February 7, 2018 denying Defendant's motion and directing the Parties to engage in focused discovery so as to promptly move for summary judgment on the issue of whether the Plan qualified for the Church Plan exemption.

15.     In response, Plaintiffs propounded fulsome written discovery, including document requests, interrogatories, and requests for admission.  Plaintiffs' counsel also reached out to defense counsel to gauge any further interest in Defendant in reaching an amicable resolution.

16.     In response to these settlement overtures, the Parties began discussing (i) the state of ERISA jurisprudence post-*Stapleton*, (ii) settlements in analogous ERISA class actions, and (iii) the financial health of the Plan.

17.     To facilitate these discussions, Defendant produced certain key information concerning   the   financial   health   of   the   Plan,   including   a   report   prepared   by

PricewaterhouseCoopers LLP.

18.     When Plaintiffs' inquired, counsel for Defendant represented that PwC has been Defendant's actuary service provider for more than the last decade.

19.     These discussions amongst counsel, while at times intense, allowed the Parties to reach an accord on the broad parameters of a settlement.  However, it required a nearly all-day, in person settlement conference with Magistrate Judge Jacob P. Hart to bridge the gap between the Parties.

20.     Even after this settlement conference, it took several more months of negotiating before the precise contours of the Parties' settlement were agreed to.

21.     Prior to engaging in these settlement discussions, Class Counsel had a fulsome understanding of the inner-workings of the Plan.  Indeed, during the course of this Litigation, Class Counsel have obtained and reviewed documents from Defendants, including Plan governing documents and materials, communications with Plan participants, internal Holy Redeemer documents regarding the Plan, press releases, public statements, news articles and other publications, and financial information regarding the overall financial health of the Plan.

22.     In short, Class Counsel had the information necessary to help assist their clients in making an informed decision regarding the appropriateness of this proposed Settlement.

**CLASS COUNSEL BELIEVES THAT THE PROPOSED SETTLEMENT SATISFIES THE APPLICABLE FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT WHEN REVIEWING PROPOSED CLASS ACTION SETTLEMENTS**

23.     Before agreeing to the proposed Settlement, Class Counsel assessed its merits using various factors typically used by counsel in this type of case including the factors used by courts in the Third Circuit to assess proposed class action settlements.  Class Counsel believes that the proposed Settlement is fair, reasonable, and adequate when the applicable factors are

considered. Those factors include: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

24.     The complexity, expense, and likely duration of the litigation justify preliminary approval of the Settlement. Defendant indicated that they intended to vigorously defend this Action by, among other things, putting the financial health of the Plan before the Court, presumably in a summary judgment motion.

25.     While all retirement plans should have a long-term objective of reaching a funding level of 100% (or fully funded), generally speaking, a retirement plan is considered healthy if it has a funded ratio of over 80%.[2]

26.     Based on the information provided by Defendant, the Plan had a funded ratio of over 96% as of January 1, 2017.

27.     The one-time payment of the Settlement Amount will increase the Plan's funded ratio, bringing it closer to a funded ratio of 100%.

28.     In addition, the adoption of a formal funding policy that complies with actuarial principles will ensure that the Plan is considered "healthy" both in the immediate term and going forward.

---

[2] This shorthand ratio for determining what constitutes a "healthy" pension plan is based, in part, on a 2007 Government Accountability Office (GAO) report regarding government pensions.

29.     If Defendant's motion to dismiss is used as a barometer of Defendant's tenacity going forward, this case would have vigorously contested for years to come had the matter not settled.

30.     The reaction of the class to the Settlement has not yet been determined as Class Notice has not yet been sent.  However, all four Plaintiffs fully support the Settlement.

31.     The stage of the proceedings and the amount of discovery completed justifies approval of the Settlement.  Plaintiffs negotiated, received, and reviewed Plan-related documents subsequent to the filing of the initial complaint.  Thereafter, an amended complaint was filed based, in part, on these documents.  A motion to dismiss was fully briefed and decided.  Plaintiffs propounded a significant amount of written discovery.  Moreover, Defendant provided relevant information during the course of the settlement discussions, including information pertaining to the financial health of the Plan.  Finally, the Parties engaged in a lengthy settlement conference with Magistrate Judge Hart.

32.     All of this work clearly demonstrates that Plaintiffs and Class Counsel had ample information to determine whether the proposed Settlement was in the best interests of the Settlement Class.

33.     The risks of establishing liability and damages also counsel approval of the Settlement.  As noted above, Defendant has vigorously contested liability throughout the course of this Action and indicated that they would contest this matter going forward, including via a motion for summary judgment and, presumably at class certification.  Thus, certification, liability and damages would have remained issues had the Settlement not been reached by the Parties.

34.     Indeed, had the matter not resolved at this stage, Defendant would have likely moved for summary judgment, arguing that it is sufficiently affiliated with the Roman Catholic Church to warrant their utilization of the Church Plan exemption.

35.     The risks of maintaining the class action through the trial justifies approval of the Settlement as well.  As noted above, Defendant would have likely fought certification had this matter not have resolved.  Indeed, Defendant would have likely argued that certain individuals, including some of the Named Plaintiffs, did not yet begin collecting benefits and, consequently, suffered no damages and thus are not appropriately part of the Class.  The risks associated with maintaining a certified class therefore supports settlement.

36.     While courts also look to whether a defendant could withstand a greater judgment in determining whether a settlement is appropriate, Defendant's overall financial health was not a material part of these settlement discussions.[3]  Accordingly, Class Counsel believes this factor is neutral.

37.     The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation strongly favors approval of the Settlement.

38.     As an initial matter, the proposed Settlement confers a substantial monetary benefit on the Settlement Class through the payment of the Settlement Amount ($1.6 million) to the Plan to be used in the funding and payment of the Plan's obligations to the Plan's participants and beneficiaries (e.g., the Settlement Class members).

39.     In addition, the proposed Settlement also confers significant non-monetary relief to the Settlement Class.  This includes, *inter alia*, (i) the adoption of a financial policy that

---

[3]   Rather, as noted above, the negotiations focused on the financial health of the Plan.

ensures the Plan continues to meet actuarial standards regarding its funding obligations and (ii) a guarantee that the Plan will meet its payment obligations for the next nine years.

40.      In short, the Settlement provides for a significant monetary payment that will help ensure the ongoing financial health of the plan as well as numerous non-monetary provisions that will ensure Settlement Class members have a healthy, well-administered Plan for years to come.

41.      In addition, Class Counsel is aware of no evidence of fraud or collusion behind the Settlement.  Instead, this Settlement was the product of extensive negotiations between experienced counsel under the supervision of the Magistrate.

42.      During this Litigation, Class Counsel has developed a comprehensive understanding of the merits of the case through our work on the Action.  In our view, when we agreed to the proposed Settlement, we had sufficient information about the strengths and weaknesses of the claims and defenses in order to make a reasoned judgment about the desirability of settling the case the terms proposed.

43.      In Class Counsel's view, the stage of litigation, the amount of information digested by Plaintiffs' counsel, and the overall landscape of ERISA jurisprudence regarding the Church Plan exemption weigh in favor of preliminarily approving the Settlement.

### THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

44.      Plaintiffs seek certification of the following Settlement Class:

> The Plaintiffs and all other Persons who are or were Plan participants, whether vested or non-vested, in or beneficiaries of the Plan.

### THE PROPOSED SETTLEMENT CLASS MEETS THE
### REQUIREMENTS OF RULE 23(A)

45.     In Class Counsel's view the proposed Settlement Class satisfies the requirements of Rule 23 for class certification.  Federal Rule of Civil Procedure 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

46.     In Class Counsel's view, the class is so numerous that joining all members is impracticable.  Counsel for Defendant has represented that there are over 5,300 individuals who would comprise the Settlement Class.  This is in accord with Class Counsel's understanding that there are thousands of participants in the Plan.  As a result, Class Counsel suggests that the Action amply satisfies the numerosity requirement.

47.     Second, there are questions of law or fact common to the Settlement Class. These common questions include (1) whether the Plan is subject to ERISA, and, if so; (2) whether the fiduciaries of the Plan have failed to administer and failed to enforce the funding obligations of the Plan in accordance with ERISA.  Indeed, Plaintiffs' central theory of the case, that Defendant improperly claimed the Church Plan exemption affects all Settlement Class members as its application exempted Defendant's Plan from regulation under and compliance with ERISA's mandates.

48.     Third, Plaintiff's claims are typical of the proposed Settlement Class because all claims of the Plaintiffs and the Settlement Class arise from the same practices by Defendant – namely the failure to administer the Plan in accordance with ERISA.  As such, all Plan participants  and  beneficiaries,  including  the  Named  Plaintiffs,  have  the  same  claims

(Defendant's failure to conform to ERISA). Thus, there are no unique facts or circumstances that would render any claims atypical.

49.     Fourth, in Class Counsel's view, Plaintiffs are adequate representatives because their interests are not in conflict with the Settlement Class. Instead, Plaintiffs and members of the Settlement Class share the common goal of trying to ensure the Plan's compliance with ERISA. Moreover, the Plaintiffs have amply demonstrated their commitment to the prosecution of this Action through (i) their assistance in drafting and reviewing the complaints, (ii) meeting and conferring with Plaintiffs' Counsel regarding their experiences with Defendant, (iii) providing documents to their counsel, (iv) attending the settlement conference before Magistrate Judge Hart, and (v) conferring with their counsel regarding the parameters of the proposed Settlement.

## THE PROPOSED SETTLEMENT CLASS MEETS THE
## REQUIREMENTS OF RULE 23(B)

50.     The proposed Settlement Class meets the requirements of Rule 23(b)(1) for certification because there is a clear risk of inconsistent adjudication and incompatible standards. Absent certification, two participants could bring identical actions and achieve diametrically opposite results – with one finding the Plan was subject to ERISA and the other finding that it was not.

51.     The proposed Settlement Class also meets the requirements for class certification under Rule 23(b)(2) as the Plaintiffs are plainly seeking primarily injunctive or declaratory. Indeed, Plaintiffs are principally seeking an order from the Court requiring Defendant to comply with ERISA's mandates regarding the funding and administration of the Plan.

52.     Thus, while Class Counsel believe that certification of the Settlement Class is

appropriate under either Rule 23(b)(1) or (b)(2), we believe the Court should grant certification under both Rule 23(b)(1) and (b)(2) in an abundance of caution and so as not to jeopardize the interests of non-parties to this action.

## RULE 23(G) IS SATISFIED

53.     Finally, certifying a class requires the Court, under Rule 23(g), to examine the capabilities and resources of counsel for the class to determine whether they will provide adequate representation to the class.  Here, Class Counsel have substantial experience handling class actions and other complex litigation.

54.     As the Court is undoubtedly aware, a firm's experience is based on the experience of its attorneys.  As the primary attorney responsible for the prosecution of this matter on behalf of the Firm, the Court should look to my relevant experience.

55.     I am a graduate of both Temple University and Temple University School of Law (J.D. 2001).  I am licensed to practice law in Pennsylvania, New Jersey, and California. In addition, I am admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Third, Eighth, Ninth, and Eleventh Circuits, the United States District Courts for the Eastern District of Pennsylvania, Eastern District of Michigan, Northern District of Illinois, Northern, Southern, Central and Eastern Districts of California, and District Court of New Jersey.

56.     I have substantial experience in prosecuting class actions pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101, *et. seq.*  My expertise in this precise area of the law is well recognized, as I have spoken at ERISA conferences on such topics as fiduciary liability and developments in ERISA

jurisprudence.

57.    My experience in prosecuting ERISA class actions includes serving as class counsel in such cases as *In re Bristol-Myers Squibb ERISA Litig.* No. 02-cv-10129 (S.D.NY.) (settlement of ERISA claims of 40,000 class members for $41.22 million plus structural plan changes valued at up to $52 million); *In re Westar Energy Inc. ERISA Litig.,* No. 03-4032-JAR (D. Kan.) ($9.25 million cash settlement); *In re Federal Home Loan Mortgage Corp. Securities & Derivative Litig.,* No. 04-md-1584 (S.D.N.Y.) (settlement of ERISA claims for $4.65 million plus additional ameliorative measures); *In Re RCN ERISA Litig.,* Master File No.  04-cv-5068  (D.N.J.)  ($5.375  million  cash settlement); and  *Falk v. Amerada  Hess Corp.,* No. 03-CV-2491-FSH- PS ($2.25 million in cash plus structural remedies valued at up to 23.8 million).

58.    While I was chair of F&F's employment practices group, and based, at least in part, on my experience and expertise, F&F was appointed to serve as co-lead counsel in several ERISA actions, including *Galimba v. Amedisys, Inc.,* No. 3:10-cv-395 (M.D. La.) and *Bredthauer v. Lundstrom,* No. 4:10-cv-3132 (D. Neb.).

59.    Moreover, the attorneys of CWG were the primary attorneys in the matter of *Hellman v. CPI Corporation, et al,* o. 4:12-cv-2177 (E.D. Mo), an ERISA class action that was granted final approval on a class-wide basis on February 18. 2015. Importantly. CWG was able to attain a recovery of approximately twenty percent (20%) of the plan's total losses attributable to the diminution in value of the company stock.

60.    In addition, CWG served as co-lead counsel in the ERISA class action styled *Gedek v. Perez, et al. (In Re Kodak ERISA Litig.*), No. 6:12-cv-06051 (W.D.N.Y.) (final

approval granted for $9.7 million settlement) and served on the executive committee in the matter styled *In re 2014 RadioShack ERISA Litig.*, Master File No. 4:14-cv-959-O (N.D. Tex.).

61.     In achieving these settlements, I have worked closely with independent fiduciaries and, where appropriate, with the Department of Labor to ensure that the terms of the settlement are approved.

62.     In addition to these ERISA matters, I also have significant experience in other complex litigation matters.  For example, I recently served as lead trial attorney in the certified class action styled *Verma v. 3001 Castor Inc.*, No. 13-cv-3034-ABB (E.D. Pa.).  In that matter, I helped obtain a jury verdict for over $4.5 million (the full measure of damages sought in that wage and hour class action).

63.     In short, having served as class counsel in numerous other actions, the members of CWG are well-versed in avoiding any duplication of work, while ensuring that a case is adequately staffed.

## THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE

64.     Submitted contemporaneously herewith is a true and correct copy of the proposed Class Notice to be sent to members of the Settlement Class and published on a website maintained by the Settlement Administrator.

65.     Class Counsel have successfully used similar notice programs in other settled cases and courts have repeatedly approved similar programs.  The proposed Class Notice provides detailed information about the Settlement, including a comprehensive summary of its material terms, including the monetary and non-monetary relief provided by the proposed Settlement as well as the release of claims.  In addition, the Class Notice also details how

Defendant has agreed to pay separately the attorneys' fees, expenses and Service Payments to the Named Plaintiffs as awarded by the Court, but not to exceed collectively $237,500.

66.     In addition, Defendant has also agreed to make available the Class Notice on its internal electronic portal.  This portal is used by employees of Defendant to receive information from Defendant.   Accordingly, it is anticipated this electronic publication will allow current employees who are also Plan participants another means of receiving the proposed Class Notice.

67.     In Class Counsel's view, Plaintiff's proposed means of class notice meets or exceeds the standards for due process and Rule 23.  Class Counsel believe that a direct first-class mailing to each Settlement Class member's last known address in addition to an Internet website presence will result in a very high percentage of actual notice to the Settlement Class members, ensuring that the proposed Class Notice and overall notice plan meet the mandates of due process and the requirements of Rule 23.

## SETTLEMENT ADMINISTRATOR

68.     Pursuant to the terms of the Settlement Agreement, should the Settlement become Final, Defendant has agreed to pay up to $20,000 in fees and expenses regarding the administration of the settlement by a neutral third party.

69.     Class Counsel obtained three bids from various well-respected claims administrators regarding their estimated cost for overseeing this Settlement, including conducting the direct mailing of the Class Notice and posting of said notice, along with other relevant material, on their website.

70.     After receiving these bids, Class Counsel and counsel for Defendant conferred and have agreed that they believe Dahl Administration should be appointed by

14

the Court to serve as the Settlement Administrator and perform those functions required of the Settlement Administrator that are enumerated in the Settlement Agreement.

## ATTORNEYS' FEES, EXPENSES, AND SERVICE PAYMENT

71.     Pursuant to the terms of the Settlement Agreement and subject to Court approval, Class Counsel may seek the Maximum Class Counsel Fee Award ($237,500).  This amount shall represent payment for all attorneys' fees incurred by Plaintiffs' Counsel, all expenses incurred in the prosecution and resolution of this Action, and any Service Payment awarded to the Named Plaintiffs in recognition of their time and effort in assisting in litigating this matter.

72.     As set forth in the Settlement Agreement, prior to the Final Approval Hearing, Class Counsel will submit a fulsome brief on the appropriateness of Class Counsel's fee request, request for reimbursement of expenses, and Plaintiffs' Service Payment request.

73.     Each of these requests is detailed in the proposed Class Notice and includes information for Settlement Class members who wish to object to any or all of these requests. As such, Class Counsel believes that Settlement Class members could, if they so desire, voice their opinions as to these requests to which Class Counsel will then respond in their forthcoming submission.

74.     It is black letter law that Class Counsel are entitled to their out-of-pocket expenses that were reasonably and necessarily incurred in furtherance of the prosecution of this Litigation.  Such expenses include, for example, Class Counsel's costs associated with filing fees.

75.     Class Counsel will submit a report detailing each expense it seeks reimbursement for prior to the Final Approval Hearing.

76.     Class Counsel's intent to request separate payment by Defendant of Class Counsel's attorneys' fees is, frankly, below fee awards in other analogous ERISA actions involving claims regarding the Church Plan exemption.

77.     The proposed Service Payment to Plaintiff is also appropriate as courts across the country routinely grant such awards in recognition of the contribution the named plaintiff(s) have made to the case and the benefit they helped confer to the settlement class and is line with awards in similar cases in this District.

78.     Here, Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) providing Class Counsel with information regarding Defendants' employment practices; (3) attending the settlement conference; and (4) working with Class Counsel throughout the settlement discussions.  Their efforts were a substantial benefit to the Settlement Class.

79.     Accordingly, I believe the requested Service Payment to each of the four Named Plaintiffs is eminently appropriate.

80.     Despite the appropriateness of these requests, fulsome justification of the awarding of the Maximum Class Counsel Fee Award will be submitted for the Court's consideration after the Settlement Class has had an opportunity to opine on the fee, expense, and Service Payment award requests and well in advance of the Final Approval Hearing.

## CONCLUSION

81.     Plaintiffs and Class Counsel respectfully submit that the Settlement is an excellent result for the Settlement Class in this case.  Class Counsel recommend the Settlement as fair, reasonable, and adequate, and they request that this Court: (1) preliminarily approve the

Settlement Agreement, (2) certify the proposed class and appoint Class Counsel (3) approve the Class Notice and related notice plan, and (4) set a date for a Final Approval Hearing between 100 and 120 days after the Court enters the preliminary approval order.

I declare under penalty of perjury that the foregoing is true and correct. This Declaration was executed on August 10, 2018 in King of Prussia, Pennsylvania.

*/s/ Gerald D. Wells, III*
Gerald D. Wells, III