# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------

KAREN SNYDER, CHERYL ROBINSON-KELLY, BARBARA FREDERICI, AND KIMBERLY NIEDRIST, individually and on behalf of all others similarly situated,

                      Plaintiffs,

          v.

HOLY REDEEMER HEALTH SYSTEM d/b/a/ HOLY REDEEMER HOSPITAL, *et al*.,

                    Defendants.

   :
   :   Civil Action No. 2:17-cv-00960-TJS-JPH
   :

---------------------------------------------------------

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
# <u>CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS</u>

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ..................................................................................................... 1

II.     LITIGATION HISTORY .......................................................................................... 4

        A.      SUMMARY OF THE LITIGATION ............................................................ 4

        B.      SETTLEMENT NEGOTIATIONS .............................................................. 5

III.    THE PROPOSED SETTLEMENT'S MATERIAL TERMS .................................... 6

        A.      SETTLEMENT CLASS ............................................................................... 6

        B.      SETTLEMENT CONSIDERATION ........................................................... 6

        C.      RELEASES ................................................................................................... 8

        D.      ATTORNEYS' FEES, EXPENSES, AND COSTS ..................................... 8

IV.     CLASS CERTIFICATION IS PROPER ................................................................... 9

        A.      STANDARD FOR CERTIFICATION ......................................................... 9

        B.      THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS OF
                RULE 23(a) FOR CERTIFICATION ......................................................... 10

                1.      Rule 23(a)(1) - Numerosity ........................................................... 10

                2.      Rule 23(a)(2) – Plaintiffs' Claims Present Common Questions of Law and
                        Fact For Purposes of Settlement .................................................... 10

                3.      Rule 23(a)(3) – Plaintiffs' Claims are Typical of Class Claims For
                        Purposes of Settlement .................................................................. 11

                4.      Rule 23(a)(4) – Plaintiffs and Class Counsel are "Adequate" .................. 12

                        (a)     Qualifications of Counsel .................................................. 13

(b)    Absence of Conflict ........................................................ 13

C.    THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23(b)(1) AND/OR (b)(2) .......................................... 14

1.    Rule 23(b)(1): Individual Actions Would Create Inconsistent Adjudications or Be Dispositive of the Interests of Absent Members...... 15

2.    Rule 23(b)(2): Defendant Has Acted on Grounds Generally Applicable to the Class and Relief for the Class as a Whole is Appropriate ................. 16

D.    THE CLASS NOTICE SATISFIED RULE 23 & DUE PROCESS REQUIREMENTS .................................................................. 17

V.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ........................ 18

A.    THE STANDARDS FOR FINAL APPROVAL .................................... 18

1.    Complexity, Expense And Likely Duration Of The Litigation ............... 20

2.    Reaction Of The Class To The Settlement ............................... 21

3.    Stage Of The Proceedings And The Amount Of Discovery Completed .. 22

4.    Risks Of Establishing Liability And Damages ......................... 23

5.    Risks Of Maintaining The Class Action Through The Trial ................... 24

6.    Ability Of Defendant To Withstand A Greater Judgment ...................... 25

7.    Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation .............. 25

B.    THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO THE CLASS ....................................................... 26

VI.    THE PLAN OF ALLOCATION SHOULD BE APPROVED ........................ 27

VII.    CONCLUSION ........................................................ 28

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Advocate Health Care Network v. Stapleton,*
    137 S. Ct. 1652 (2017) .......................................................................................................4, 26

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ..........................................................................................................9, 16

*Austin v. Pennsylvania Dep't of Corrs.,*
    876 F.Supp. 1437 (E.D. Pa. 1995) ........................................................................................20

*Bacal v. SEPTA,*
    No. 94-6497, 1995 U.S. Dist. LEXIS 6609 (E.D. Pa. May 15, 1995) ....................................14

*Bernhard v. TD Bank, N.A.,*
    No. 08-4392, 2009 U.S. Dist. LEXIS 92308 (D.N.J. Oct. 5, 2009) .......................................22

*Bonett v. Educ. Debt Servs.,*
    No. 01-6528, 2003 U.S. Dist. LEXIS 9757 (E.D. Pa. May 11, 2003) ..............................10, 12

*Boyd v. Coventry Health Care, Inc.,*
    299 F.R.D. 451 (D. Md. 2017) .............................................................................................18

*Brieger v. Tellabs, Inc.,*
    245 F.R.D. 345 (N.D. Ill. 2007) .....................................................................................11, 12

*In re Budeprion XL Mktg. & Sales Litig.,*
    MDL No. 2107, 2012 U.S. Dist. LEXIS 91176 (E.D. Pa. July 2, 2012) ................................18

*Carver v. Presence Health Network,*
    No. 15-2905, 2018 U.S. Dist. LEXIS 146837 (N.D. Ill. July 10, 2018)...............10, 11, 14, 27

*In re Centocor Secs. Litig. III.,*
    No. 98-260, 1999 U.S. Dist. LEXIS 1224 (E.D. Pa. Jan. 27, 1999)........................................12

*Cohen v. Chi Title Ins. Co.,*
    242 F.R.D. 295 (E.D. Pa. 2007).............................................................................................10

*Colbert v. Trans Union Corp.,*
    No. 93-6106, 1995 U.S. Dist. LEXIS 578 (E.D. Pa. Jan. 12, 1995)........................................14

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)....................................................................................................22

*Ehrheart v. Verizon Wireless,*
    609 F.3d 590 (3d Cir. 2010)..................................................................................................18

*In re Enron Corp.,*
    MDL No. 1446, No. 01-3913, 2006 WL 1662596 (S.D. Tex. June 7, 2006).........................11

*Gates v. Rohm and Haas*,
    265 F.R.D. 208 (E.D. Pa. 2010)..............................................................10

*In re General Motors Corporation Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).............................................................19, 25

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)......................................................19, 20, 22

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................24

*Griffith v. Providence Health & Servs.*,
    No. 14-1720, 2017 U.S. Dist. LEXIS 137063 (W.D. Wash. Mar. 21, 2017) ...................14, 18

*Hassine v. Jeffes*,
    846 F.2d 169 (3d Cir.1988)...............................................................10

*Kemp-Delisser v. St. Francis Hosp. & Med. Ctr.*,
    No. 15-1113, 2016 U.S. Dist. LEXIS 152496 (D. Conn. Nov. 3, 2016) ........................ *passim*

*Lake v. First Nationwide Bank*,
    900 F.Supp. 726 (E.D. Pa. 1995) .......................................................20

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ...................................................21

*Markocki v. Old Republic Nat'l Title Ins. Co.*,
    254 F.R.D. 242 (E.D. Pa. 2008).........................................................15

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................11

*Medina v. Catholic Health Initiatives*,
    877 F. 3d 1213 (10th Cir. 2017) .......................................................26

*Neil v. Zell*,
    275 F.R.D. 256 (N.D. Ill. 2011).....................................................15, 16

*Perry v. FleetBoston Fin. Corp.*,
    229 F.R.D. 105 (E.D. Pa. 2005).........................................................22

*Pichler v. UNITE*,
    228 F.R.D. 230 (E.D. Pa. 2005).........................................................11

*In re Prudential Ins. Co., Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998).............................................................12

*In re RadioShack Corp. ERISA Litig.*,
    MDL. No. 1875 (N.D. Tex. Oct. 12, 2010) .............................................18

*Ripley v. Sunoco, Inc.*,
   287 F.R.D. 300 (E.D. Pa. June 26, 2012) ...........................................................12

*Sanzone v. Mercy Health*,
   326 F. Supp. 3d 795 (E.D. Mo. 2018).................................................................3

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009).............................................................................16

*In re School Asbestos Litig.*,
   921 F.2d 1330 (3d Cir. 1986)...........................................................................19

*Schwartz v. Dana Corp.*,
   196 F.R.D. 275 (E.D. Pa. 2000)........................................................................11

*Schwartz v. TXU Corp.*,
   No. 02-2243, 2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005)...................27

*SEPTA. v. Orrstown Fin. Servs., Inc.*,
   No. 12-0993, 2012 U.S. Dist. LEXIS 116937 (M.D. Pa. Aug. 20, 2012) ...............12

*Slomovics v. All for a Dollar, Inc.*,
   906 F. Supp. 146 (E.D.N.Y. 1995) ....................................................................21

*Smith v. OSF Healthcare Sys.*,
   No. 16-467, 2018 U.S. Dist. LEXIS 168037 (S.D. Ill. Sept. 28, 2018)...........3, 21, 23, 26

*Stapleton v. Advocate Health Care*,
   No. 14-01873 (N.D. Ill. June 27, 2018) .............................................................26

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011)..............................................................................10

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)..............................................................................19

**Statutes**

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101, *et. seq.* ................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ......................................................................4

Fed. R. Civ. P. 23 ...................................................................................... *passim*

Fed. R. Civ. P. 23(a) ................................................................................. *passim*

Fed. R. Civ. P. 23(b) ................................................................................. *passim*

Fed. R. Civ. P. 23(e) ...............................................................................17, 19

Fed. R. Civ. P. 23 (g) ...................................................................................................................13

Fed. R. Civ. P. 56 ........................................................................................................................23

## I.    INTRODUCTION

Plaintiffs Karen Snyder, Cheryl Robinson-Kelly, Barbara Frederici, and Kimberly Niedrist (collectively, "Plaintiffs") submit this brief in support of their unopposed motion for final approval of the proposed class action settlement ("Settlement") -- set forth in the Class Action Settlement Agreement (the "Settlement Agreement" or "SA") -- reached by the Parties in this matter.[1]  With this unopposed motion, Plaintiffs are filing the Settlement Agreement and related documents as well as supporting declarations and a proposed Final Approval Order. This Court preliminarily approved the Settlement on September 5, 2018 (Dkt. No. 32). As set forth below, all conditions required for final approval have been met.

Plaintiffs' counsel, on behalf of Plaintiffs and the proposed class of individuals set forth below, seeks final approval of the proposed Settlement which will resolve claims against Defendant Holy Redeemer Health System d/b/a Holy Redeemer Hospital ("Defendant" or "Holy Redeemer") for alleged violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101, *et. seq.,* ("ERISA"). As set forth in Plaintiffs' pleadings, Plaintiffs allege that Defendant improperly claimed that their retirement plan was exempt from ERISA's mandates by asserting that the plan qualified for the "church plan" exemption of ERISA. Defendant has vigorously opposed these allegations and continues to deny the claims and any liability.  The Settlement provides for (i) a significant monetary payment to the Plan (consisting of a one-time

---

[1] All capitalized terms used in this brief that are also defined in the Settlement Agreement shall have the same meaning as set forth in the Settlement Agreement. Although previously provided to the Court, for sake of thoroughness, Class Counsel is resubmitting the Settlement Agreement as Exhibit 1 to the Declaration of Gerald D. Wells, III ("Wells Decl."). The Wells Decl. is being filed in support of the present motion and Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Service Payments to Plaintiffs. The Wells Decl. is incorporated herein by reference. All citations to exhibits shall reference the exhibits attached to the Wells Decl. and shall be cited to as "Ex.___").

payment of $1,600,000.00) and (ii) significant non-monetary equitable relief for the Settlement Class for nine years moving forward.[2]

The payment of attorneys' fees and costs is separate and apart from the monetary payment to the Plan. The agreement related to Class Counsel's fees and expenses was negotiated after the Parties reached agreements in principle as to material issues. Separate and apart from these payments, Defendant is also bearing the costs of notice to the Settlement Class and other costs associated with the Settlement Administrator, up to $20,000.00. *See* SA § 4.10. Only costs associated with the administration of this Settlement in excess of $20,000.00 shall be deducted from the payment to Class Counsel. *Id.* Thus, these amounts (administration costs up to $20,000.00) and attorneys' fees and costs are separate and apart from the monetary payment to the Plan, and do not diminish the Settlement's recovery for the Settlement Class.

As set forth in Plaintiffs' submission seeking preliminary approval, the proposed Settlement effectively achieved the stated goal of this litigation – increased funding of the Plan and the providing for of certain ERISA-like protections (including disclosure of certain information and the inability of Defendant to unilaterally cease providing accrued retirement benefits). All of this has been obtained without causing the Settlement Class to suffer the time and risk of a trial, nor run the gauntlet of surviving Defendant's invariable motion for summary judgment. The foregoing parameters of the Settlement were conveyed to members of the Settlement Class. The Settlement resolves all claims asserted by Plaintiffs in this Action.

The proposed Settlement is now ready for final review, as the Parties have fully complied with the terms of the Court's Preliminary Approval Order ("Preliminary Approval Order"), dated September 5, 2018, including providing notice of the proposed Settlement to the Settlement

---

[2] This non-monetary relief includes, but is not limited to, Defendant (i) maintaining a funding policy in accordance with actuarial principles and (ii) guaranteeing that the Plan has sufficient funds to pay Plan participants and beneficiaries their benefits as they become due.

Class.  Pursuant to the Settlement Agreement and in accordance with the Preliminary Approval Order, publication of the approved form of Class Notice was mailed to the last known address of each member of the Settlement Class. *See* Declaration of Kimberly K. Ness ("Ness Decl."), Ex. 2, ¶¶7-10. In addition, on September 17, 2018, the Settlement Administrator established a website (www.HolyRedeemerSettlement.com) which identified, among other things, a toll-free phone number wherein Settlement Class Members could call to ask questions about the Settlement. *Id.* at ¶11. The notice can be found at https://https://secure.dahladmin.com/ REDEEM/content/documents/Notice.pdf. Class Counsel has received no objections to any aspect of the proposed Settlement including the requested attorneys' fees and Service Payments to the Named Plaintiffs.

This Settlement is an excellent result considering the factual and legal risks to the class of continued litigation. Indeed, since the Parties began discussing the possibility of settlement shortly after the Court issued its order on Defendant's motion to dismiss, the legal landscape regarding church plan exemption cases has materially changed – and not for the better for Plaintiffs. *See, e.g., Smith v. OSF Healthcare Sys.,* No. 16-467, 2018 U.S. Dist. LEXIS 168037 (S.D. Ill. Sept. 28, 2018) (granting summary judgment for defendant finding church plan exemption applies to the plans at issue); *see also Sanzone v. Mercy Health,* 326 F. Supp. 3d 795, 808 (E.D. Mo. 2018) (granting motion to dismiss for lack of subject matter jurisdiction, finding the "Plan at issue in this case is maintained by a church-associated principal-purpose organization for the provision of benefits").[3] Thus, it is abundantly clear that absent the Settlement reached here, there is no guarantee that Plaintiffs would have prevailed at trial.

---

[3] Had this case not settled, Plaintiffs would have plainly faced substantially similar arguments going forward. In addition, and further evincing the propriety of the proposed settlement, the Parties only reached the Settlement after lengthy settlement negotiations, including an in-person settlement conference with Magistrate Judge Hart. Even after reaching agreement in principal to settle Plaintiffs' claims, it took several additional months of further negotiations between counsel in order to achieve the Settlement *sub judice.*

Indeed, had this Settlement not been achieved, Plaintiffs and the members of the Settlement Class faced the very real risk that they would not achieve any relief. Thus, this proposed Settlement is clearly in the best interests of the Settlement Class and, as set forth below, is fair, reasonable, and adequate.

Accordingly, Plaintiff requests that the Court enter the accompanying proposed Final Approval Order that, among other things, will: (a) grant final approval of the Settlement Agreement, and (b) certify the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1) and/or (b)(2). For the reasons set forth in greater detail below, the Settlement satisfies the criteria that courts in this Circuit routinely apply for the approval of class action settlements.

## II.    LITIGATION HISTORY[4]

### A.    SUMMARY OF THE LITIGATION

Plaintiffs Karen Snyder, Cheryl Robinson-Kelly, Barbara Frederici, and Kimberly Niedrist filed their initial complaint on March 2, 2017, asserting various claims for relief under ERISA against Defendant, alleging that the Holy Redeemer Plan is not a Church Plan within the meaning of ERISA§ 3(33). Thereafter, to obviate the need for Defendant to respond to Plaintiffs' pleading and in light of the Supreme Court's impending decision in a directly analogous matter, the Parties jointly moved the Court for a stay of proceedings pending the Supreme Court's decision in *Advocate Health Care Network v. Stapleton*.  After the Supreme Court issued its decision in *Stapleton*[5], the Plaintiffs filed an amended complaint on August 28, 2017.

Thereafter, on September 29, 2017, Defendant moved to dismiss the Complaint by Rule 12(b)(1) and 12(b)(6). The motion was fully briefed by the Parties. On February 7, 2018, the

---

[4] Much of the Sections II and III were previously submitted to the Court in Plaintiffs' memorandum in support of preliminary approval (Dkt. No. 28). For ease of reference, Plaintiffs are resubmitting the history of the Litigation and the terms of the Settlement for the Court's convenience.

[5] *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2017).

Court: (i) denied Defendant's motion to dismiss; (ii) directed the Parties to engage in focused discovery; and (iii) ordered the Parties to move for summary judgment on or before April 17, 2018. *See* ECF Nos. 19, 21. Shortly thereafter, Plaintiffs propounded comprehensive written discovery, including document requests, interrogatories, and requests for admission. The Court's February 7, 2018 Order caused the Parties to focus their attention, in earnest, on the possibility of settlement.

To facilitate intelligent settlement discussions, Defendant produced certain key information concerning the financial health of the Plan. This information included a report prepared by PricewaterhouseCoopers LLP – Defendant's actuary service provider for more than the last decade.

### B. SETTLEMENT NEGOTIATIONS

Settlement negotiations in this matter spanned several months and were, at times, intense. While the Parties discussed the possibility of an amicable resolution since near the inception of this matter, these discussions did not intensify until after the Court issued its order regarding Defendant's motion to dismiss. Thereafter, the Parties discussed the parameters of settlements in analogous matters and Plaintiffs requested information concerning the financial health of the Plan. These discussions allowed the Parties to exchange substantive settlement proposals and subsequently to reach an accord, in broad strokes, as to the contours of any putative settlement.

Thereafter, the Parties participated in a nearly full-day settlement conference with Magistrate Judge Hart on May 14, 2018. Magistrate Judge Hart was, thankfully, able to bridge the gap between the Parties. As such, the Settlement negotiations were intense and arm's-length. During the settlement conference, the Parties engaged in spirited debate with Magistrate Judge Hart as to critical legal and factual issues concerning liability and damages. Throughout the litigation and settlement conference, Class Counsel was cognizant of the strengths and

weaknesses of Plaintiffs' claims and Defendant's defenses. After hours of intense negotiations, the Parties agreed in principle to a settlement. Nevertheless, it took months of additional negotiations between counsel for the Parties before the precise contours of the Settlement were agreed upon. The arm's-length nature of the settlement negotiations strongly supports the conclusion that the proposed Settlement is fair, reasonable, and adequate.

## III.    THE PROPOSED SETTLEMENT'S MATERIAL TERMS

The Settlement provides that the Defendant will pay $1,600,000.00 to the Plan to help further ensure the financial strength of the Plan and its ability to meet its obligations to participants and beneficiaries (e.g., the Settlement Class Members). In addition, Defendant will also provide significant non-monetary relief for at least the next nine years.  Class Counsel believe that this non-monetary equitable relief is the principal feature of this proposed Settlement.  In exchange, Plaintiffs and the Plan will dismiss their claims against Defendant as set forth more fully in the Settlement Agreement.

### A.    SETTLEMENT CLASS

The Settlement Agreement contemplates that the Court will certify a mandatory, non-opt-out class under Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2). *See* SA at § 3.3.3. The Settlement Class is defined as: the Plaintiffs and all other Persons who are or were Plan participants, whether vested or non-vested, in or beneficiaries of the Plan. *Id.,* at § 1.37.

### B.    SETTLEMENT CONSIDERATION

Under the Settlement Agreement, upon the Settlement becoming Final, Defendant will make a one-time payment of $1.6 million to the Plan. This payment will increase the Plan's overall funding level. While all retirement plans should have a long-term objective of reaching 100% funded, generally speaking, a retirement plan is considered healthy if it has a funded ratio of over 80%. *See* Wells Decl. at ¶43. Based on information provided during the course of the

settlement negotiations, the Plan had a funded ratio of over 96% as of January 1, 2017, and the one-time payment of the Settlement Amount will increase the Plan's funded ratio. *See* Wells Decl. at ¶¶44-45.

In addition, for a period of nine years following the Settlement Date (or until the Plan is terminated), Defendant will:

> • maintain a funding policy. The funding policy shall be in accordance with actuarial principles by a third party on an annual basis designed to maintain the financial health and viability of the Plan (*see* SA at 9.1.2);

> • will guarantee that the Plan has sufficient funds to pay Plan participants and beneficiaries their benefits under the Plan as they become due (*see* SA at 9.1.3); and

> • shall make available to active employee Plan participants electronically (or otherwise) (i) the current Plan summary; and (ii) annual pension benefit statements showing participants' vested/non-vested account balance and interest credited on the account balance (*see* SA at 9.1.5).[6]

Additionally, Defendant cannot terminate the Plan during this nine-year period unless there are sufficient assets in the Plan to meet the life annuity and lump sum distribution amounts elected by the Plan's participants. *See* SA at 9.1.4. Further, if the Plan merges with another plan during this nine-year period, Plan participants shall, at a minimum, be entitled to receive the same benefits as they were entitled to pre-merger. *Id.,* at 9.1.8.

Combined, the monetary component of the Settlement is designed to further strengthen the Plan (and keep it closer to 100% funded going forward), and the non-monetary relief requires

---

[6] For former employees or beneficiaries, the Class Notice advises these individuals that they can review this material in hard copy form at the Defendant's corporate location. *See* SA at 9.1.6

Defendant to implement a strategy to attain full, or near full, funding over a reasonable period. In short, the proposed Settlement provides material relief to the Plan's participants and beneficiaries, and effectively guarantees them that the Plan will be adequately funded for the foreseeable future.

### C.    RELEASES

The Settlement Agreement provides for releases by and among Plaintiffs, Defendant, and certain other non-parties related to the Litigation. *See* SA at § 5. The persons to be released by Plaintiffs are defined as the "Releasees" and are enumerated at Section 1.29 of the Settlement Agreement. The Releasees will be released from the "Released Claims," which generally include all claims that could have been asserted by Plaintiffs, arising under federal or state law, related to any assertion that the Plan failed to comply with ERISA and/or did not qualify as a Church Plan . Plaintiffs, the Settlement Class, and Class Counsel will be released from claims relating to the institution and prosecution of the Action. *See* SA at § 5.4.

### D.    ATTORNEYS' FEES, EXPENSES, AND COSTS

Pursuant to the terms of the Settlement Agreement, in addition to the Settlement Amount ($1.6 million to the Plan), Defendant has agreed to pay, subject to Court-approval, up to $237,500 to Class Counsel for their fees, out-of-pocket expenses, and Service Payments to the Named Plaintiffs. Pursuant to the terms of the Settlement Agreement, any Service Payments awarded to the four Named Plaintiffs in recognition of their efforts in assisting in the prosecution of this Action are to be deducted from any award to Class Counsel. Pursuant to the Settlement Agreement, the Parties have agreed not to seek in excess of $5,000 to each Named Plaintiff. Should this Settlement become Final, costs for administration of this Settlement of up to $20,000, will be borne by Defendant, with additional costs above that amount, if any, to be borne by Class Counsel from their fee award in this matter. *See* SA at § 4.10.

## IV.    CLASS CERTIFICATION IS PROPER

One of this Court's functions in reviewing a proposed settlement of a class action such as this one is to determine whether the action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes. *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). Plaintiffs request and Defendant does not oppose, that the Court certify following class for settlement purposes only (hereinafter referred to as the "Settlement Class"):

> the Plaintiffs and all other Persons who are or were Plan participants, whether vested or non-vested, in or beneficiaries of the Plan.

Certification of the Settlement Class is warranted in the Action for a number of reasons. Most significantly, before entering the Preliminary Approval Order, this Court examined the record and preliminarily certified the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1) and/or (b)(2). (*See* Dkt. No. 32). Nothing has changed in the record that would compel the Court to reach a different conclusion with respect to the final, rather than preliminary, approval of the Settlement Class. No objections have been filed. Finally, as set forth below, this case satisfies every requirement for certifying a Settlement Class pursuant to Fed. R. Civ. P. 23.

### A.    STANDARD FOR CERTIFICATION

For a class to be certified, Plaintiffs must satisfy all four requirements of Rule 23(a) along with one of the three categories of Rule 23(b). *Amchem*, 521 U.S. 591 (1997). Certification here for settlement purposes is sought under Rule 23(b)(1) and/or (b)(2) for the Settlement Class.

Rule 23(a) provides that a class should be certified if: (1) the class members are so numerous that joinder of all members is impracticable; (2) the action addresses questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representative parties will fairly and

adequately protect the interests of the class. As set forth below, each of these Rule 23(a) requirements, as well as the requirements of Rule 23(b)(1) and (b)(2), is met in this case. Importantly, class actions challenging the applicability of the "church plan" exemption have regularly been certified in directly analogous settlements. *See, e.g., Carver v. Presence Health Network*, No. 15-2905, 2018 U.S. Dist. LEXIS 146837, **5-6 (N.D. Ill. July 10, 2018) (certifying settlement class in directly analogous action under both Rule 23(b)(1) and (b)(2)).

## B.    THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23(a) FOR CERTIFICATION

### 1.    Rule 23(a)(1) - Numerosity

"Numerosity requires a finding that the putative class is so numerous that joinder of all members is impracticable." *Bonett v. Educ. Debt Servs.*, No. 01-6528, 2003 U.S. Dist. LEXIS 9757 at *5, (E.D. Pa. May 11, 2003) (*quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001)). A sister court in this District has held that a "class does not need a magic number of claimants" nor must the [plaintiffs] allege the exact number or identity of the class members." *Cohen v. Chi Title Ins. Co.*, 242 F.R.D. 295, 299 (E.D. Pa. 2007); *see also Gates v. Rohm and Haas*, 265 F.R.D. 208, 215 (E.D. Pa. 2010) (the threshold is approximately 40 class members). Here, the Settlement Administrator mailed the Class Notice to over 5,200 individuals. *See* Ness Decl. at ¶¶7, 10. The numerosity requirement is therefore readily satisfied.

### 2.    Rule 23(a)(2) – Plaintiffs' Claims Present Common Questions of Law and Fact For Purposes of Settlement

The "commonality" requirement of Rule 23(a)(2) is not overbearing. *Bonett*, 2003 U.S. Dist. LEXIS 9757 at *5. Rather, as the Third Circuit has noted, commonality only requires "that the harm complained of be common to the class." *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir.1988). Accordingly, the commonality inquiry focuses on the defendant's conduct. *Sullivan v.*

10

*DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) ("commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members"). "Commonality exists when proposed class members challenge the same conduct of the defendants." *Schwartz v. Dana Corp.*, 196 F.R.D. 275, 279 (E.D. Pa. 2000).

Consequently, "[b]y their very nature, ERISA actions often present common questions of law and fact." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142 (S.D.N.Y. 2010). In the instant matter, the common questions of law and fact include, among other things, (1) whether the Plan is subject to ERISA, and, if so; (2) whether the fiduciaries of the Plan have failed to administer and failed to enforce the funding obligations of the Plan in accordance with ERISA. *See, e.g., Kemp-Delisser v. St. Francis Hosp. & Med. Ctr.*, No. 15-1113, 2016 U.S. Dist. LEXIS 152496, *34 (D. Conn. Nov. 3, 2016) (finding commonality in case involving improper claiming of ERISA church plan exemption).[7] As the *Enron* Court concluded, "[t]he resolution of these issues will not depend upon which plan participant sues on behalf of each Plan, but are common to all members of the class." *In re Enron Corp.*, MDL No. 1446, No. 01-3913, 2006 WL 1662596, at *9 (S.D. Tex. June 7, 2006); *see also Carver,* 2018 U.S. Dist. LEXIS 146837, *5 (finding commonality met in church plan exemption case). Thus, the commonality prong is plainly satisfied.

### 3. Rule 23(a)(3) – Plaintiffs' Claims are Typical of Class Claims For Purposes of Settlement

"Typicality" under Rule 23(a)(3) requires "the interests of the class and the class representatives [align] so that the latter will work to benefit the entire class." *Pichler v. UNITE,* 228 F.R.D. 230, 249-50 (E.D. Pa. 2005). "The central inquiry in a typicality evaluation is

---

[7] *See also Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 349 (N.D. Ill. 2007) (finding that "because plaintiffs' claims derive from defendants' actions (or inactions) with respect to the Plan, plaintiffs have demonstrated that their claims involve a common nucleus of operative fact" and therefore that the putative ERISA class met the commonality requirement).

whether 'the named plaintiff's individual circumstances are markedly different or … the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Bonett*, 2003 U.S. Dist. LEXIS 9757 at *7, *citing Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985).

Thus, a plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class. *See, e.g.*, *Ikon Office Solutions, Inc. Litig.*, 191 F.R.D. at 463; *In re Centocor Secs. Litig. III.*, No. 98-260, 1999 U.S. Dist. LEXIS 1224, at *6 (E.D. Pa. Jan. 27, 1999) (noting that typicality requirement of Rule 23(a)(3) is satisfied where "litigation of the named plaintiffs' claims can reasonably be expected to advance the interests of absent class members"); *see also SEPTA. v. Orrstown Fin. Servs., Inc.*, No. 12-0993, 2012 U.S. Dist. LEXIS 116937, at *8 (M.D. Pa. Aug. 20, 2012). In the ERISA context, typicality is plainly met where a putative ERISA class "seek[s] relief on behalf of the plan . . . for alleged fiduciary violations as to the Plan." *Brieger*, 245 F.R.D. at 349.

Here, Plaintiffs' claims arose from a common course of conduct by Defendant of claiming the Church Plan exemption and therefore allegedly failing to properly maintain the Plan in accordance with ERISA's mandates. As such, the Plaintiffs' claims are typical of the claims of members of the proposed settlement class

### 4.  Rule 23(a)(4) – Plaintiffs and Class Counsel are "Adequate"

Rule 23(a)'s fourth and final requirement is that "[t]he representative parties will fairly and adequately protect the interests of the class." The adequacy requirement seeks first to "test[] the qualifications of the counsel to represent the class" and second to "uncover conflicts of interest between named parties and the class they seek to represent." *See In re Prudential Ins. Co., Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 309 (E.D. Pa. June 26, 2012) ("The adequacy requirement encompasses

two distinct inquires designed to protect the interests of absentee class members: whether the named plaintiffs' interests are sufficiently aligned with the absentees', and the qualifications of the counsel to represent the class."). Both prongs are met in this case.

### (a)  Qualifications of Counsel

Fed. R. Civ. P. 23 requires the Court to examine the capabilities and resources of counsel to determine whether they will provide adequate representation to the class. Class Counsel – Connolly Wells & Gray, LLP – easily meet these requirements.

Plaintiffs are represented by counsel experienced in class action litigation. Class Counsel's work in this case on behalf of the Plaintiffs and the proposed Settlement Class has been substantial. They have committed significant time and effort to identify, investigate, and prosecute the claims in the Litigation. They have devoted substantial time and resources to the case, including: (i) developing the factual basis of the claims; (ii) preparing a detailed and thorough Complaint; (iii) successfully defeating Defendant's motion to dismiss; (iv) conducting informal discovery, as well as serving formal discovery; (v) engaging in hard-fought and ultimately successful settlement negotiations with Defendant; and (vi) memorializing their efforts in a Settlement Agreement. Additionally, Class Counsel have substantial experience in handling class actions, other complex litigation, and claims of the type asserted here including, specifically, ERISA class actions are well documented. *See, e.g.,* Wells Decl. ¶¶ 77-85. [8]

### (b)  Absence of Conflict

There is nothing to suggest that Plaintiffs have any interest antagonistic to the Settlement Class. Plaintiffs have represented the interests of the proposed Settlement Class vigorously and without conflict, and throughout the course of this Litigation were prepared to vigorously pursue

---

[8] Likewise, Class Counsel's efforts in prosecuting this case together with their background and experience in ERISA litigation also amply demonstrates that Class Counsel satisfy the requirements of Rule 23(g).

this Litigation on behalf of themselves and the proposed class. Plaintiffs provided their attorneys with key information necessary to investigate and prosecute this Action and remained fully abreast of the settlement negotiations with defense counsel. Indeed, all four Plaintiffs participated in the settlement conference before Magistrate Judge Hart. The claims of Plaintiffs and the proposed Settlement Class are identical, and there is no potential for conflicting interests in the class action. *See Colbert v. Trans Union Corp.*, No. 93-6106, 1995 U.S. Dist. LEXIS 578 *9 (E.D. Pa. Jan. 12, 1995). In short, the Plaintiffs amply satisfy the adequacy prong of Rule 23(a).

Based on the foregoing, this Court should appoint Plaintiffs as class representatives for the Settlement Class and appoint Connolly Wells & Gray, LLP as Class Counsel.

### C.    THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23(b)(1) AND/OR (b)(2) [9]

Plaintiffs meet the requirements for certification of their proposed Settlement Class as they are predominately seeking declaratory and injunctive relief – namely protections concerning the operation and administration of the Plan. "Class relief is especially appropriate 'where plaintiffs request declaratory and injunctive relief against a defendant engaging in a common course of conduct toward them, and there is therefore no need for individualized determinations of the propriety of injunctive relief.'" *Bacal v. SEPTA*, No. 94-6497, 1995 U.S. Dist. LEXIS 6609, *11 (E.D. Pa. May 15, 1995) (*quoting Neal v. Casey (Baby Neal)*, 43 F.3d 48, 57 (3d Cir. 1994)).

---

[9] While Plaintiffs acknowledge that the Court can certify the Settlement Class under either Rule 23(b)(1) or (b)(2), Plaintiffs move for certification under both Rule 23(b)(1) and (b)(2) in an abundance of caution and so as not to jeopardize the interests of non-parties to this action. Indeed, other courts in analogous Church Plan ERISA cases have granted certification under both Rule 23(b)(1) and (b)(2). *See, e.g., Griffith v. Providence Health & Servs.*, No. 14-1720, 2017 U.S. Dist. LEXIS 137063 (W.D. Wash. Mar. 21, 2017) (in a church plan case, granting certification of settlement class under both Rule 23(b)(1) and (b)(2)); *Carver*, 2018 U.S. Dist. LEXIS 146837, **5-6 (same).

1.    **Rule 23(b)(1): Individual Actions Would Create Inconsistent Adjudications or Be Dispositive of the Interests of Absent Members**

As a sister court in this District has held:

> Rule 23(b)(1) provides that class certification is appropriate under two specific scenarios. First, a class may be certified where prosecution of separate actions would create a risk of inconsistent judgments for class members and incompatible standards for the party opposing the class. Second, a class may be certified where individual prosecution of separate actions would create a risk that the rights of members not party to the individual adjudication would be substantially impaired or would impede nonparty members' ability to protect their interests.

*Markocki v. Old Republic Nat'l Title Ins. Co.*, 254 F.R.D. 242, 250 (E.D. Pa. 2008).[10]

Here, there is a clear risk of inconsistent adjudication and incompatible standards. Indeed, in the absence of certification, two participants could bring identical actions and achieve different results, with one court holding that the Plan is ERISA-regulated, and the other holding that it is not. *See, e.g., Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011) ("ERISA class actions are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan, as is the predominant claim here, will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan. Essentially . . . a plaintiff's victory would necessarily settle the issue for all other prospective plaintiffs.").

Accordingly, courts have held that "ERISA litigation 'presents a paradigmatic example of a (b)(1) class' because of the nature of ERISA's 'distinctive 'representative capacity' and remedial provisions." *Kemp-Delisser*, 2016 U.S. Dist. LEXIS 152496, *37 (*quoting In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 n.13 (S.D.N.Y. 2004)). As such, courts

---

[10] In *Markocki,* the court held that certification was appropriate under Rule 23(b)(1) because "prosecution of separate actions could result in incompatible standards of conduct for Defendant, and could jeopardize the interests of members not party to the individual actions." *Markocki*, 254 F.R.D. at 250.

have not hesitated in certifying ERISA cases under Federal Rule of Civil Procedure 23(b)(1). *Neil v. Zell*, 275 F.R.D. at 267 ("Numerous ERISA actions in this district have been certified under 23(b)(1).") (collecting cases). The Third Circuit is in accord with this legal analysis. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (describing putative ERISA class actions as "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class").[11] Indeed, courts have certified settlement classes in directly analogous actions as Rule 23(b)(1) actions. *See, e.g., Kemp-Delisser*, 2016 U.S. Dist. LEXIS 152496, *38 (finding requirements of Rule 23(b)(1) satisfied).

As a result, certification of the proposed class under Rule 23(b)(1) is appropriate in this ERISA action.

### 2.    Rule 23(b)(2): Defendant Has Acted on Grounds Generally Applicable to the Class and Relief for the Class as a Whole is Appropriate

"Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." *Amchem*, 521 U.S. at 614. "Rule 23(b)(2) applies ... when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

Here, Plaintiffs clearly seek injunctive and declaratory relief – as they are seeking a Court order regarding the operation and administration of the Plan. Indeed, had Plaintiffs prevailed in establishing Defendant's liability, Defendant would have been obliged to make the *Plan* whole and take whatever equitable actions are ordered by the Court, including the declaratory and

---

[11] Indeed, even the Advisory Committee Notes on Rule 23 specifically acknowledge that actions which "charge[] a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of . . . beneficiaries"—i.e., an ERISA action like the present action—"should ordinarily be conducted as class actions" under Rule 23(b)(1)(B). *See* Fed. R. Civ. P. 23(b)(1)(B) advisory committee's note to 1966 amendment.

equitable relief specifically sought by Plaintiffs. Since this is the principal benefit of the settlement, the incidental monetary relief does not prohibit certification under Rule 23(b)(2). *See, e.g., Kemp-Delisser*, 2016 U.S. Dist. LEXIS 152496, *39 (in analogous action, certifying settlement class under Rule 23(b)(2) due to incidental monetary relief). As a result, certification of the proposed class under Rule 23(b)(2) is also appropriate in this ERISA action.

### D.    THE CLASS NOTICE SATISFIED RULE 23 & DUE PROCESS REQUIREMENTS

The form and method of notice utilized here to notify the Settlement Class of the pendency of the proposed Settlement and the fairness hearing plainly satisfied all due process considerations and meets the requirements of Fed. R. Civ. P. 23(e)(1). In accordance with the Court's Preliminary Approval Order, as well as the terms of the Settlement Agreement, notice was effectuated by directly mailing the Class Notice to the last known address of each putative Settlement Class Member, establishing a settlement website (which contained the key documents in this Settlement). The publishing of the Notice on a dedicated website and establishment of a dedicated phone line ensured that Class Members had ready access to all relevant information. Accordingly, the form and method of notice plainly satisfies all due process considerations and meets the requirements of Fed. R. Civ. P. 23(e).

The Class Notice utilized here provided Settlement Class Members with all the pertinent information regarding the Litigation and the Settlement. The Class Notice fully informed Settlement Class Members of the Action, the proposed Settlement and the information they need to make informed decisions about their rights. The Class Notice provided detailed information about the Settlement, including: (i) a comprehensive summary of its terms; (ii) their rights with respect to the settlement, including their right to object; (iii) detailed information regarding the identities of the released parties and the released claims; (iv) Class Counsel's intent to request

attorneys' fees, reimbursement of expenses, and seek a Service Payment award for the Plaintiffs separate from the monetary payment to the Plan; and (v) information about the date of the final approval hearing.[12] In sum, the Notice provides specifics on the date, time, and place of the Final Approval Hearing and describes the procedures, as well as deadlines, for objecting to the Settlement, any specific proposed term of the Settlement, or the motion for attorneys' fees, payment of costs, and/or Service Payment awards to the Named Plaintiffs.

As such, the proposed notice provisions here exceed notice provisions that have been found to be appropriate by sister courts in this District. *See, e.g., In re Budeprion XL Mktg. & Sales Litig.,* MDL No. 2107, 2012 U.S. Dist. LEXIS 91176, **14-15 (E.D. Pa. July 2, 2012). The notice provisions here have also been approved by courts in directly analogous actions. *Kemp-Delisser*, 2016 U.S. Dist. LEXIS 152496, **40-41 (finding directly mailing of notice adequate in church plan exemption settlement); *Griffith*, 2017 U.S. Dist. LEXIS 137063, *7 (in analogous action, finding posting on website and direct mailing of notice satisfied Rule 23 and due process). Now that Class Counsel and the Settlement Administrator have effectuated the Notice pursuant to the Court-approved plan, this Court should finally hold that the Class Notice was adequate and fully satisfied all due process and Rule 23 requirements.

## V.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.    THE STANDARDS FOR FINAL APPROVAL

The settlement of class action litigation is favored and encouraged in the Third Circuit. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the

---

[12] This information is often recognized by courts as satisfying the requisite standard. *See, e.g., In re RadioShack Corp. ERISA Litig.*, MDL. No. 1875, Order Granting Motion for Preliminary Approval of Settlement, Dkt. No. 82 (N.D. Tex. Oct. 12, 2010) at ¶ 4 (endorsing analogous class notice). Indeed, similar notice plans in ERISA settlements have been approved. *Griffith*, 2017 U.S. Dist. LEXIS 137063, *6 (approving notice plan consisting of direct mailing and posting on class counsel's websites); *Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 457 (D. Md. 2017).

increasing load of litigation faced by the federal courts").[13] Indeed, the Third Circuit has had a long-established policy of "encouraging settlement of complex litigation that would otherwise linger for years." *In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1986).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the settlement of class actions. When a proposed class settlement is reached, it must be submitted to the Court for approval. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"). Preliminary approval is the first of three steps comprising the approval process for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. Finally, there is a settlement approval or final fairness hearing. *See* Manual for Complex Litigation § 21.632-633 (4th ed. 2004). This matter is now at the third and final step. As set forth below, based on the terms of the Settlement and applicable case law, final approval is plainly warranted.

To determine whether the settlement is fair, reasonable and adequate under Rule 23(e), courts in the Third Circuit apply the nine-factor test enunciated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), which was reaffirmed in *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 534-35 (3d Cir. 2004). These factors are:

1) The complexity, expense, and likely duration of the litigation;

2) the reaction of the class to the settlement;

3) the stage of the proceedings and the amount of discovery completed;

4) the risks of establishing liability;

5) the risks of establishing damages;

---

[13] *See also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re General Motors Corporation Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlements, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation")

6) the risks of maintaining the class action through the trial;

7) the ability of the defendants to withstand a greater judgment;

8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh,* 521 F.2d at 156-57.

Plaintiffs' counsel believes the terms of the proposed settlement in this case are fundamentally fair, reasonable, and adequate, and achieve the goals envisioned by ERISA, especially when considering the risk, expense, complexity, and delay associated with further litigation. In making its determination of these risks, the Court should give deference to the opinions of Plaintiffs' counsel, who have researched the issues and are familiar with the facts of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995)("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class."); *Lake v. First Nationwide Bank,* 900 F.Supp. 726, 732 (E.D. Pa. 1995)("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class.'").

As explained below, the application of the *Girsh* factors unequivocally demonstrates that the proposed Settlement is fair, reasonable and adequate.

### 1.    Complexity, Expense And Likely Duration Of The Litigation

This Action has been diligently litigated by both sides. Defendant was prepared to vigorously contest Plaintiffs' claims as was made manifest by its comprehensive motion to dismiss. Further, significant work has been done, including but not limited to: review of documents produced informally, interviewing Plaintiffs and other fact gathering, legal research

and comparison of analogous cases, analysis of financial data concerning the financial health of the Plan and participation in a Court-supervised settlement conference. If the Settlement is not approved, additional litigation will be required, with no guarantee there will be any extra benefit to the Settlement Class. Accordingly, these facts weigh in favor of the Settlement. *See In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 642 (E.D. Pa. 2003)(noting that the "protracted nature of class action antitrust litigation means that any recovery would be delayed for several years," and "substantial and immediate benefits" to class members favors settlement approval); *Slomovics v. All for a Dollar, Inc.,* 906 F. Supp. 146, 149 (E.D.N.Y. 1995) (where litigation is potentially lengthy and will result in great expense, settlement is in the best interest of the class members).

Given the current state of the law, there is the very real possibility that had this case continued, Plaintiffs and the Settlement Class would have obtained far less than what the proposed Settlement provides, or even nothing at all. Indeed, in recent months, plaintiffs in analogous cases have not fared well when pressing their claims. *See, e.g., Smith*, 2018 U.S. Dist. LEXIS 168037 (granting summary judgment for defendant finding church plan exemption applies to the plans at issue). Accordingly, this factor strongly favors final approval of this proposed Settlement.

### 2.    Reaction Of The Class To The Settlement

Pursuant to the Court's Preliminary Approval Order, as well as the terms of the Settlement Agreement, the deadline for Class Members to object or to exclude themselves from the Settlement Agreement has now passed.[14] Class Counsel has received no objections to the Settlement. *See* Wells Decl. at ¶35. A complete absence of any objections weighs in favor of

---

[14] The Class Notice, which was approved by the Court in its Preliminary Approval Order, clearly informed all prospective Settlement Class Members that the response deadline to object was November 19, 2018.

final approval of the Settlement. *See Kemp-Delisser*, 2016 U.S. Dist. LEXIS 152496, *24 (in analogous settlement, finding the lack of objections "does not give the Court any reason to doubt the fairness and adequacy of the Settlement Agreement").

### 3.    Stage Of The Proceedings And The Amount Of Discovery Completed

The lack of formal discovery in this matter does not impede approval of this Settlement. As a court noted in approving a settlement in an analogous action, due to "the nature of the core legal question, whether [defendant] could establish a church plan exempt from ERISA's requirements, most of the key relevant facts in this case are in the public domain and listed in the Plaintiff's complaint." *Kemp-Delisser*, 2016 U.S. Dist. LEXIS 152496, **25-26. This is not to say that no information was exchanged. Rather, as part of the settlement discussions, Defendant produced a report from PwC, the Plan's actuary for more than the last ten years. This allowed Plaintiffs to adequately determine whether Defendant's claim that the Plan was adequately funded held water.

Moreover, the proposed settlement is the result of arm's-length negotiations, including a settlement conference with Magistrate Judge Hart, as well as numerous follow up correspondence with Judge Hart's chambers. The participation of Judge Hart insured that the settlement negotiations were conducted at arm's length and without collusion between the Parties. *See, e.g., Bernhard v. TD Bank, N.A.*, No. 08-4392, 2009 U.S. Dist. LEXIS 92308, *5 (D.N.J. Oct. 5, 2009); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (neutral's "involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). Accordingly, this factor also weighs in favor of approval of the Settlement. *See, e.g., Perry v. FleetBoston Fin. Corp.,* 229 F.R.D. 105, 115 (E.D. Pa. 2005) (finding that the *Girsh* factor satisfied where the parties "gained such an appreciation through their exchange of some discovery" and participation in the mediation process).

### 4.    Risks Of Establishing Liability And Damages

"These inquiries survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Ikon*, 209 F.R.D. at 105 (*quoting In re Prudential Ins. Co., Am. Sales Practice Litig. Agent Actions,* 148 F.3d at 319). The *Ikon* court went on to explain:

> For example, if it appears that further litigation would realistically risk dismissal of the case on summary judgment or an unsuccessful trial verdict, it is in the plaintiffs' interests to settle at a relatively early stage. In contrast, if it appears that liability is extraordinarily strong, and it is highly likely that plaintiffs would prevail at trial, settlement might be less prudent. On this issue, the court should avoid conducting a mini-trial and must to a certain extent, give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action.

209 F.R.D., at 105 (citation omitted).

In the instant matter, had this case not resolved, Plaintiffs would have had to defeat Defendant's motion for summary judgment and Defendant's inevitable argument that they were sufficiently affiliated with the Roman Catholic Church to warrant their utilization of the Church Plan exemption. As noted above, plaintiffs recently lost a motion for summary judgment in a directly analogous action. *Smith*, 2018 U.S. Dist. LEXIS 168037 (granting summary judgment for defendant finding church plan exemption applies to the plans at issue). Given the Court's order following the motion to dismiss, it is clear that Plaintiffs here would have faced a substantially similar Rule 56 motion.

Further, counsel for Defendant also indicated that they would place the Plan's financial health before the Court thereby making class certification and damages hotly contested issues. These issues also counsel in favor of settlement at this juncture. *See Kemp-Delisser*, 2016 U.S. Dist. LEXIS 152496, *27 (in approving settlement, noting that "even if Plaintiff had prevailed on

the issue of liability at trial, litigating the damages issue would also have carried considerable risk"). Thus, although Plaintiffs are confident in their claims against Defendant, there is significant risk that their claims could be defeated in their entirety satisfying this factor. *See Global Crossing*, 225 F.R.D. at 459 n.13 (finding that plaintiffs' significant legal and factual obstacles to proving their case, when viewed against the substantial and certain benefits of settlement, supported settlement approval).

Accordingly, it is Class Counsel's considered opinion that settlement on the proposed terms at this juncture in the case is the eminently appropriate course of action for Plaintiffs and the Settlement Class to take.

### 5.    Risks Of Maintaining The Class Action Through The Trial

As a sister court within this Circuit aptly noted, "[t]here is always a risk of decertification in any class action." *Delandro*, 2011 U.S. Dist. LEXIS 55249, *33. "'Consistent with this reality,'" courts have been "'satisfied that the inherent difficulties of bringing a class action to trial weighs in favor of approving the settlements.'" *Id.,* at **33-34 (quoting *In re Automotive Refining Paint Antitrust Litigation*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007)). This case is no different. While Plaintiffs believe strongly that certification of their proposed class would have been granted by the Court, there is always cause for doubt. Indeed, Defendant would have likely argued that certain individuals, including some of the Named Plaintiffs, did not yet begin collecting benefits and, consequently, suffered no damages and thus are not appropriately part of the Class. Defendant's likely attacks on class certification counsels in favor of settlement. *Global Crossing,* 225 F.R.D. at 460 (concluding settlement was appropriate because defendants may contest class certification "thereby creating appreciable risk to the class members' potential for recovery").

Based on Plaintiffs' counsel's experience in ERISA cases, and Defendant's prior assertions, Defendant clearly would have vigorously opposed class certification had the case moved forward. These risks render settlement at this juncture the prudent course.

### 6.    Ability Of Defendant To Withstand A Greater Judgment

The ability of Defendant to withstand a greater judgment was not a material part of the settlement discussions. Rather, as noted above, the settlement discussions focused on Defendant's steadfast belief that there was no liability due to the Plan's significant financial health. Accordingly, this factor is neutral.

### 7.    Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation

"This inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *General Motors*, 55 F.3d at 806. In *General Motors*, the Third Circuit further explained that:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement . . . The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*Id.* (citation omitted.)

As previously discussed the proposed Settlement confers a substantial benefit on the Settlement Class. In addition to adding to the financial strength of the Plan via the $1.6 million funding contribution, the proposed Settlement also confers significant non-monetary relief to the Settlement Class, including the maintenance of a funding policy that in accordance with actuarial standards and a guarantee that the Plan will meet its benefit payment obligations for the

foreseeable future. This is in line with other settlements in Church Plan exemption cases. *See, e.g., Stapleton v. Advocate Health Care,* No. 14-01873 (N.D. Ill. June 27, 2018) (ECF 172)(order granting final approval to putative class action where settlement provided both monetary and equitable relief); *see also Kemp-Delisser*, 2016 U.S. Dist. LEXIS 152496 (same).

Importantly, Plaintiffs were cognizant of the shifting landscape in ERISA jurisprudence regarding the Church Plan exemption. For example, Plaintiffs' case arguably was negatively impacted by the Supreme Court's decision in *Stapleton*. In addition, the Tenth Circuit Court of Appeals recently decided *Medina v. Catholic Health Initiatives*, 877 F. 3d 1213 (10th Cir. 2017), which rejected several other theories of ERISA liability in a different "church plan" case. While Plaintiffs believe these cases are readily distinguishable, they do clearly illustrate the risk inherent in further litigation that this Settlement avoids. Indeed, as noted above, only months ago, a district court in an analogous case granted summary judgment for defendants finding the church plan exemption applied to the plans at issue. *Smith*, 2018 U.S. Dist. LEXIS 168037.

## B. THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO THE CLASS

In the instant Settlement, Defendant has agreed to pay a Settlement Amount of $1.6 million plus provide significant protections regarding the operation and administration of the Plan for the next nine years. In short, the proposed Settlement provides a significant cash contribution to the Plan to further its financial health and provides assurances for the sound operation and administration of the Plan going forward. Accordingly, all Settlement Class members will materially benefit from this Settlement.

Further, the Settlement does not unduly grant preferential treatment to the Plaintiffs. Rather, they are instead offered, subject to the Court's approval, a reasonable Service Payment that recognizes the added contribution they made to the prosecution of the litigation, including

the burden and risks associated with bringing this action publicly, as well as in recognition of the time they expended in furtherance of the Class (*e.g.*, providing background information on Defendant's employment practices and operation, attending the settlement conference, conferring with Class Counsel during the settlement negotiations). Because of their individual efforts, Settlement Class Members will receive significant benefits from the Settlement. Courts in analogous cases have not hesitated to award modest incentive payments to the named plaintiffs. *See, e.g., Carver*, 2018 U.S. Dist. LEXIS 146837, *15  (approving incentive awards of $8,000 to each of four named plaintiffs).

Because of the substantial benefit conferred to the Settlement Class, as well as the attendant risks of continued litigation, Class Counsel believes that the Settlement is an outstanding result and should be, respectfully, granted final approval by this Court. *See* Wells Decl. at ¶41.

## VI.    THE PLAN OF ALLOCATION SHOULD BE APPROVED

"Approval of a plan of allocation of settlement proceeds among the members of the Class under Federal Rule of Civil Procedure 23 is governed by the same standard of fairness, reasonableness and adequacy applicable to approval of the settlement as a whole." *Schwartz v. TXU Corp.*, No. 02-2243, 2005 U.S. Dist. LEXIS 27077, *77 (N.D. Tex. Nov. 8, 2005). Here, pursuant to the terms of the Settlement Agreement, the Plan Committee shall treat the Settlement Amount (the $1.6 million) as "Plan assets" to be used in the funding and payment of the Plan's obligations to the Plan's participants and beneficiaries, *e.g.*, the Settlement Class Members. *See* SA at § 4.9. Thus, all Settlement Class Members are treated equally as the Settlement Amount shall be used to help fund and pay the Plan's general obligations to its members – thereby ensuring that all participants and beneficiaries benefit from the continued financial soundness of the Plan.

Moreover, the Settlement Agreement specifically precludes Defendant from utilizing any portion of the Settlement Amount to defray its other obligations under the Settlement Agreement. *Id.,* at § 1.35. For example, Defendant cannot use the Settlement Amount to pay its obligation to cover the Settlement Administrator's Costs. Rather, the Settlement Amount is specifically earmarked to assist in funding and paying the Plan's obligations to Settlement Class Members. Consequently, this Court should not hesitate in approving the proposed Plan of Allocation set forth in the Settlement Agreement.

## VII.    CONCLUSION

The proposed settlement provides a fair, reasonable, and adequate award to Plaintiffs and the proposed class, and puts an end to this Litigation. Accordingly, final approval should be granted. Further, the proposed Settlement Class satisfies the requirements of Rules 23(a) and Rule 23(b)(1) and/or 23(b)(2). Accordingly, the Settlement Class should be certified as a settlement class. Thus, for the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant final approval of the Settlement, and (2) certify, for settlement purposes, Plaintiffs' claims pursuant to Fed. R. Civ. P. 23(b)(1) and/or 23(b)(2).

Dated: November 19, 2018                    Respectfully submitted,

**CONNOLLY WELLS & GRAY, LLP**

By: */s/ Gerald D. Wells, III*
   Gerald D. Wells, III
Robert J. Gray
2200 Renaissance Blvd., Suite 275
King of Prussia, PA 19406
Telephone: (610) 822-3700
Facsimile: (610) 822-3800
Email: gwells@cwglaw.com
       rgray@cwglaw.com

*Counsel for Plaintiffs and the Proposed Settlement Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of November 2018, a true and correct copy of the foregoing document was filed with the Court utilizing its CM/ECF system, which will send notice of such filing to all counsel of record.

*/s/ Gerald D. Wells, III*
Gerald D. Wells, III